[S.F. No. 23262. In Bank. Mar. 19, 1976.]

In re the Marriage of IMA NELL and HARRY BOUQUET.
IMA NELL BOUQUET, Respondent, v.
HARRY BOUQUET, Appellant.

584

**COUNSEL**

Bruce H. Johnsonbaugh for Appellant.

Watson & Hoffe, Francis A. Watson, Jr., and Ronald A. Rubenstein as Amici Curiae on behalf of Appellant.

Alfred P. Chasuk and Orville C. Casteel for Respondent.

William R. Bishin as Amicus Curiae.

## OPINION

**TOBRINER, J.**—Harry Bouquet appeals from certain provisions of an interlocutory judgment dissolving the marriage and determining the property rights of the parties. .

Harry Bouquet and Ima Nell Bouquet married on June 9, 1941, and separated on March 2, 1969. On April 20, 1971, Ima petitioned for dissolution of marriage and determination of the property rights of the spouses. After trial on May 17 and 18, 1972, the court entered an interlocutory judgment dissolving the marriage and determining the property rights of the spouses on May 26, 1972.

On March 4, 1972, after the filing of the petition but before the entry of the interlocutory judgment, Civil Code, section 5118, as amended in 1971, took effect. The amended legislation provides that the earnings and accumulations of *both* spouses while they live apart constitute separate property.[1] Prior to the amendment of section 5118, the earnings and accumulations of the wife while the spouses lived apart were separate property although those of the husband were community property.[2] With the trial court's permission, the husband amended his original response and insisted at trial that his earnings and accumulations subsequent to March 2, 1969, the date of separation, were his separate property. The trial court rejected the husband's contention and held that only the earnings and accumulations he acquired after March 4, 1972, the effective date of the amendment, constituted his separate property.

This case squarely poses an issue of first impression, namely, whether amended section 5118 governs property rights acquired prior to the effective date of that amendment that have not been finally adjudicated by a judgment from which the time to appeal has elapsed. In resolving this question affirmatively we conclude that the amendment, properly construed, requires retroactive application and that such application does not constitute an unconstitutional deprivation of the wife's property.

---

[1]Section 5118, as amended, provides: "The earnings and accumulations of a spouse and the minor children living with, or in the custody of the spouse, while living separate and apart from the other spouse, are the separate property of the spouse."

[2]Prior to the 1971 amendment, section 5118 read: "The earnings and accumulations of the wife and of her minor children living with her or in her custody, while she is living separate from her husband, are the separate property of the wife." Civil Code sections 5110 and 5119, subdivision (b) provided, in effect, that the earnings and accumulations of the husband were his separate property only after the rendition of the interlocutory judgment of dissolution of marriage.

We first address the issue of statutory construction: does the amendment to section 5118 of the Civil Code govern property acquired prior to its effective date. Although legislative enactments are generally presumed to operate prospectively and not retroactively,[3] (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962). 58 Cal.2d 142, 149 [23 Cal.Rptr. 592, 373 P.2d 640]; *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865]), this presumption does not defy rebuttal. We have explicitly subordinated the presumption against the retroactive application of statutes to the transcendent canon of statutory construction that the design of the Legislature be given effect. (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17].) The central inquiry, therefore, is whether the Legislature intended the amendment to section 5118 to operate retroactively.

The language of the amendment does little to reveal the Legislature's intent regarding the amendment's prospective or retroactive application. But the statutory language does not furnish the only resource at our disposal.[4] ▮ In *In re Estrada, supra,* 63 Cal.2d 740, we clothed an amendment to the Penal Code with retroactive effect despite the silence of its language on the issue and the presumption against retroactive application. We explained: "The rule of construction, however, is not a straightjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, *considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.*" (63 Cal.2d 740, at p. 746 (italics added); accord *City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 557 [90 Cal.Rptr. 843].)

Consistent with *Estrada's* mandate, we must address "all pertinent factors" when attempting to divine the legislative purpose. A wide variety of factors may illuminate the legislative design, "such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104

---

[3]Section 3 of the Civil Code embodies the common law presumption against retroactivity. (Cf. Pen. Code, § 3; Code Civ. Proc., § 3.)

[4]Section 3 of the Civil Code provides: "No part of [this code] is retroactive, unless expressly so declared." It does not, however, limit the search for such an express declaration to the statutory language itself. (Cf. *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948].)

Cal.Rptr. 110]; *Estate of Ryan* (1943) 21 Cal.2d 498 [133 P.2d 626].) The issue in the present case is a close one, but we conclude that the Legislature did intend the amendment to section 5118 to apply retroactively.

The husband suggests that one "pertinent factor" that supports the retroactivity of the present statute was the patent unconstitutionality of the former statute. The Legislature, the argument goes, surely intended as quickly as possible to substitute the new law for the prior constitutionally infirm law. This argument, though admittedly somewhat speculative, merits some weight in our calculus of legislative intent.

Although the constitutionality of former section 5118 is not directly before us in this case, we can nonetheless observe that it would be subject to strong constitutional challenge. Prior to the amendment, section 5118 blatantly discriminated against the husband during periods of separation: the earnings of the wife were her separate property while those of the husband belonged to the community. It seems doubtful that the state could conjure a rational relation between this unequal treatment and any legitimate state interest. It is even less likely that the state could sustain the greater showing required by our recognition that sex based classifications are inherently suspect. (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

The probable constitutional infirmity of the former law does lend some support to the conclusion that the Legislature intended the amendment to have retroactive effect. We assume that the Legislature was aware of judicial decisions (*Buckley* v. *Chadwick* (1955) 45 Cal.2d 183 [288 P.2d 12, 289 P.2d 242]); we thus assume that the Legislature knew of the dubious constitutional stature of the sexually discriminating old law. We may reasonably infer, therefore, that the Legislature wished to replace the possibly infirm law with its constitutionally unobjectionable successor as soon as possible. While this inference is hardly conclusive, it is of some value in ascertaining the Legislature's intent.

The husband relies primarily upon a Senate resolution incorporating a letter written to the President Pro Tempore of the Senate by Assemblyman Hayes, the author of the amendment. In that letter, Assemblyman Hayes voiced his view that the amendment was intended to operate retroactively, and observed that he had so argued in obtaining passage of

the bill.[5] As we shall explain, although the letter is irrelevant to the extent that it merely reflects the personal views of Assemblyman Hayes, it is quite relevant to the extent that it evidences the understanding of the Legislature as a whole.

■ In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. (*In re Lavine* (1935) 2 Cal.2d 324, 327 [41 P.2d 161, 42 P.2d 311]; *Bragg* v. *City of Auburn* (1967) 253 Cal.App.2d 50, 54 [61 Cal.Rptr. 284].) Nor do we carve an exception to this principle simply because the legislator whose motives are proferred actually authored the bill in controversy. (*Epstein* v. *Resor* (N.D.Cal., 1969) 296 F.Supp. 214, 216); no guarantee

---

[5]The Senate resolution reads as follows:
"MOTION TO PRINT IN JOURNAL
"Senator Grunsky moved that the following letter of legislative intent be printed in the Journal.
 "Motion carried.

"Assembly, California Legislature<br>Sacramento, June 14, 1972

"*Hon. James R. Mills*
*President pro Tempore of the Senate*
 "Re: Assembly Bill 5149, 1971 Regular Session, Chapter 1699
"Dear Mr. President: Several questions have arisen from lawyers and others concerning the intended application of AB 1549, 1971 Regular Session (Chapter 1699) of which I was the author. This bill amended Section 5118 of the Civil Code, a portion of the Family Law Act, of which I was one of the principal authors in the 1969 Regular Session of the Legislature.
 "The Family Law Act became effective on January 1, 1970, and was applicable to all cases thereafter filed and to all pending cases in which an interlocutory or other judgment had not yet been rendered.
 "*It was my intention* as the author of AB 1549, *and the argument I used in obtaining passage of the measure* by the Assembly and Senate of the California Legislature, *that this amendment to Section 5118 of the Civil Code* (Family Law Act) *would govern the determination of the property rights of the parties under the same rules applied by the California Supreme Court Case of Addison v. Addison,* 62 Cal.2nd 588 [*sic, 558*], 43 Cal.Rptr. 97 *(1965).* In other words, the courts, on or after the effective date of AB 1549 (March 4, 1972) must construe the status and the division of the property of the parties by the law then in effect, without regard to whether the status of the property of the parties or the division of such property might have been differently determined or divided had a judgment been made on March 3, 1972, or at any time prior thereto. *The intention was to supersede the prior law and to have the new law retroactively apply to all cases decided on and after* March 4, 1972.
"Respectfully,<br>JAMES A. HAYES<br>Assemblyman, 39th District"
(2 Sen. J. (1972 Reg. Sess.) dated June 16, 1972, at pp. 3872-3873.)
 An identical letter addressed to the Speaker of the Assembly was printed with the unanimous consent of that body. (3 Assem.J. (1972 Reg. Sess. dated June 16, 1972, at pp. 5000-5001.)

can issue that those who supported his proposal shared his view of its compass. ▮ The understandings of Assemblyman Hayes, then, do not per se expose the Legislature's intent.

In the present case, however, the resolution incorporating the Hayes letter commands respect because it gives evidence of *more* than the personal understanding of the letter's author. First, the letter casts some light on the shrouded legislative history of the amendment. Assembly-man Hayes observed not only that he intended the bill to apply retroactively, but that he *argued* to that effect in obtaining the bill's passage. In *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591 [45 Cal.Rptr. 512], the court accepted the testimony of an assemblyman as an indicator of legislative intent because the court was satisfied that the "testimony was not an expression of his own opinion . . . but a reiteration of the discussion and events which transpired in the Assembly committee hearing when the amendments . . . were under considera-tion." (235 Cal.App.2d 591, at p. 603.) Although Assemblyman Hayes did articulate his personal view that the statute operated retroactively, he also alluded to the argument that he had presented in securing the passage of the amendment. Debates surrounding the enactment of a bill may illuminate its interpretation. (*Sato* v. *Hall* (1923) 191 Cal. 510, 519 [217 P. 520].) Consequently, the letter lends some support to the retroactive application of the amendment through the light it sheds upon legislative debates.

Second, the letter is relevant because it was printed pursuant to Senator Grunsky's motion to publish it as a "letter of legislative intent." The materiality of the letter is not lost merely because it was written and published after the effective date of the amendment; we may properly consider a subsequent expression of legislative intent regarding the construction of a prior statute. (*California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702].) To be sure, Senator Grunsky's motion was technically a motion to print, not a motion of legislative intent. We are not prepared, however, to ignore completely his indica-tion—clearly embodied in the resolution—that the letter be printed as a letter of legislative intent.

To say that the letter properly bears upon the issue of legislative intent is not to hold that it necessarily concludes that issue. In many cases the indicia of intent are in conflict, and the proper construction of the statute requires us to impute weight to expressions of intent in accord with their probative value. Thus, a motion to print a letter of legislative intent

commands less respect than a formal resolution of legislative intent. Likewise, an individual legislator's recount of the argument preceding the passage of a bill probably merits less weight than extensive committee reports on the bill or a formal record of the legislative debates.

In the present case, however, such subtle balancing is unnecessary since we find no conflicting indicia against which to balance the probative value of the letter, the resolution adopting it, or the Legislature's appreciation of the probable unconstitutionality of the former law. While the language of the amendment does not evince a legislative desire that it operate retroactively, neither does it reveal a legislative intent that it operate prospectively only. Apart from the Hayes letter, the legislative history is silent on the issue of retroactivity. In short, the only indicators of legislative intent ascertainable in this case call for the retroactive application of the amendment.

Respondent must do more than merely point to the presumption against retroactive application as a counterweight. As *Estrada* counseled, the presumption should operate only when, looking at all the pertinent factors, we fail to detect the legislative intent.[6] Given the Hayes letter and the absence of conflicting indicia, we cannot hold that "it is impossible to ascertain the legislative intent." (*In re Estrada, ante,* 63 Cal.2d 740, 746.) We conclude, therefore, that the Legislature intended amended section 5118 to apply retroactively.

■ We must now determine whether the retroactive application of amended section 5118 constitutes an unconstitutional deprivation of the property of the wife. The status of property as community or separate is normally determined at the time of its acquisition. (*Trimble* v. *Trimble* (1933) 219 Cal. 340, 343 [26 P.2d 477].) Consequently, the wife gained vested[7] property rights when, prior to the effective date of amended section 5118, her husband earned income. The retroactive application of the amendment deprives the wife of her half share of the income that her husband had accumulated during that period. Notwithstanding the fact

---

[6]In other words, the presumption against retroactivity is dispositive until such time as other evidence permits us to deduce the Legislature's intent, and is completely irrelevant thereafter.

[7]The word vested assumes different meanings in different contexts. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561].) We use the word vested here to describe property rights that are not subject to a condition precedent.

that it denudes the wife of certain vested property rights, we uphold the retroactive application of the amendment.

Retroactive legislation, though frequently disfavored, is not absolutely proscribed.[8] The vesting of property rights, consequently, does not render them immutable:[9] " 'Vested rights, of course, may be impaired "with due process of law" under many circumstances. The state's inherent sovereign power includes the so-called "police power" right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. . . . The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment.' " (*Addison v. Addison, supra,* 62 Cal.2d at p. 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391], quoting Armstrong, *"Prospective" Application of Changes in Community Property Control—Rule of Property or Constitutional Necessity?* (1945) 33 Cal.L.Rev. 476, 495.)

■ In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions. (See generally Reppy, *Retroactivity of the 1975 California Community Property Reforms* (1975) 48 So.Cal.L.Rev. 977, 1048-1049; Note, *Retroactive Application of California's Community Property Statutes* (1966) 18 Stan.L.Rev. 514, 518-519, 521-522; Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation, supra,* 73 Harv.L.Rev. 692; Greenblatt, *Judicial Limitations on Retroactive Civil Legislation* (1956) 51 Nw.U.L.

---

[8]The proposition that retroactive civil legislation is not unconstitutional per se traces to *Calder v. Bull* (1798) 3 U.S. (3 Dall.) 386 [1 L.Ed. 648], in which the court ruled that the ex post facto clause of the federal Constitution applied only to criminal laws.

[9]It was customary at one time to use the word "vested" to describe rights that a court had determined could not be impaired retroactively. When the word is so defined, the statement that vested rights are immune to retroactive legislation becomes a tautology, not a proposition. (See *Loop v. State of California* (1966) 240 Cal.App.2d 591, 598 [49 Cal.Rptr. 909]; Knutson, *California Community Property Laws: A Plea for Legislative Study and Reform* (1966) 39 So.Cal.L.Rev. 240, 267; Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation* (1960) 73 Harv.L.Rev. 692, 696; Smith, *Retroactive Laws and Vested Rights* (1927) 5 Texas L.Rev. 231, 245-248.)

Rev. 540, 559.) The parties agree that amended section 5118 can be applied retroactively if such a retroactive application is necessary to subserve a sufficiently important state interest. (See *Addison v. Addison, supra,* 62 Cal.2d 558; see generally *Boyd* v. *Oser* (1944) 23 Cal.2d 613, 623 [145 P.2d 312] (Traynor, J., concurring)) The wife, however, contends that the retroactive application of this amendment serves no such interest. We disagree.

*Addison* involved a factual pattern almost identical to that of the present case; it conclusively establishes the constitutionality of applying amended section 5118 retroactively. Prior to 1961, a wife could not, upon obtaining a decree of divorce or separate maintenance, secure any interest in property that her husband had acquired in a common law state. California's 1961 quasi-community property legislation (Stats. 1961, ch. 636, §§ 1-23, pp. 1838-1845) effectively reclassified as community property any common law separate property that would have been community property if it had been acquired by a California domicilary. *Addison* upheld the constitutionality of applying that legislation to spouses who came to California, resided here, and then separated prior to the effective date of the legislation, so long as the trial was held subsequent to that date.

The application of the quasi-community property legislation to property acquired before its effective date clearly impaired the husband's vested property rights; prior to the enactment of the legislation he had been the sole owner of certain property and afterwards the property belonged to the community.[10] Nevertheless, we deemed the retroactive application of the legislation a proper exercise of the police power. The state's paramount interest in the equitable distribution of marital property upon dissolution of the marriage, we concluded, justified the impairment of the husband's vested property rights. (See generally *Williams* v. *North Carolina* (1942) 317 U.S. 287, 298 [87 L.Ed. 279, 285-286, 63 S.Ct. 207, 143 A.L.R. 1273].)

---

[10]In a cryptic passage, *Addison* apparently asserts that it is not applying the legislation retroactively: "Nor is the statute being applied retroactively. That is so because the legislation here involved neither creates nor alters rights except upon divorce or separate maintenance. The judgment of divorce was granted after the effective date of the legislation. Hence the statute is being applied prospectively." (62 Cal.2d at p. 569.) Despite this disclaimer, *Addison* clearly clothed the quasi-community property legislation with retroactive effect and so the commentators have universally recognized (Reppy, *Retroactivity of the 1975 California Community Property Reforms, supra,* 48 So.Cal.L.Rev. 977, 1083; Knutson, *California Community Property Laws: A Plea for Legislative Study and Reform, supra,* 39 So.Cal.L.Rev. 240, 270; Comment, *Marital Property and the Conflict of Laws: The Constitutionality of the Quasi-Community Property Legislation*

The infringement of the wife's vested property rights in this case finds support in the same state interest that justified the retroactive application of the legislation in *Addison;* here, as in *Addison,* the Legislature reallocated property rights in the course of its abiding supervision of marital property and dissolutions. Moreover, the legislation sprang in both cases from an appreciation of the rank injustice of the former law.[11] The calculus of the costs and benefits of the retroactive application of amended section 5118, therefore, does not differ significantly from that implicit in *Addison*. This peculiar congruence between the present case and *Addison* permits us to sustain the retroactive application of amended section 5118 without protracted discussion. The divestiture of the wife's property rights in the instant case is no more a taking of property without due process of law than was the divestiture of the husband's property rights in *Addison*. The state's interest in the equitable dissolution of the marital relationship supports this use of the police power to abrogate rights in marital property that derived from the patently unfair former law.

In sum, we hold that amended section 5118 governs all property rights, whenever acquired, that have not been finally adjudicated by a judgment from which the time to appeal has lapsed.

We reverse the judgment below and remand the case for proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

(1966) 54 Cal.L.Rev. 252, 266-267; Note, *Retroactive Application of California's Community Property Statutes* (1966) 18 Stan.L.Rev. 514, 520-521); the decision surely divested the husband of property rights that he had acquired prior to the enactment of the statute. The quoted passage was probably intended to convey the modest message that the court was not applying the 1961 legislation in a way that would disturb judgments handed down prior to its effective date on the basis of the then prevailing law. (*Id.,* at p. 521.)

[11]We observed in *Addison* that "where the innocent party would otherwise be left unprotected the state has a very substantial interest and one sufficient to provide for a fair and equitable distribution of the marital property without running afoul of the due process clause of the Fourteenth Amendment." (62 Cal.2d 558, at p. 567.) The patent unfairness of former section 5118 surely makes this an appropriate case for the use of the police power to redress retroactively inequitable property rules. Besides augmenting the state interest in giving the new law effect as quickly as possible, the unfairness of the former law also casts doubt upon the legitimacy of reliance upon it.