*448 Opinion
POTTER, J.
—Petitioner, Children’s Hospital of Los Angeles, Regional Center,[1] has petitioned this court for a writ of mandate directing respondent Superior Court of California, County of Los Angeles, “to exercise its jurisdiction and to hear and determine the question of the necessity of the continued commitment of the real party in interest and to permit petitioner to be represented by private counsel in connection therewith.” Though two separate proceedings involving two different real parties in interest have been filed, the facts are identical. Consequently we have consolidated the proceedings and will dispose of them in a single opinion.
The proceedings in the lower court were in each instance initiated in March 1977 by petitions of the regional center filed in its behalf by Musick, Peeler & Garrett and Bruce E. Clark, private counsel retained by the center. Each petition alleges that one of the real parties in interest is a resident of Pacific State Hospital in the County of Los Angeles, is believed to be developmentally disabled,[2] and is “not capable of providing for his [her] basic personal needs for food, clothing and shelter and is not able to protect himself [herself] from ordinary threats of life, health or safety.” Both petitions allege that the real party “has heretofore been judicially committed” to the state hospital and has been a resident there for an extended period and has “requested a release pursuant to section 38120 of the Health and Safety Code.”[3] Each of the petitions *449 further allege that after notification of their requests the regional center evaluated the parties seeking release “as to his [her] physical and mental condition to determine whether or not he [she] could be placed in some facility other than the state hospital,” that it was “the unanimous determination that said person required continued hospitalization because of his [her] constant maladaptive behavior and that no other facility exists in the community that has sufficient staff and facilities to provide the needed care,” wherefore petitioner recommended in each case that the real party “be committed under Section 38009.2 of the Health and Safety Code of the State of California."[4]
Motions to dismiss the petitions were made on behalf of real parties by the Public Defender of Los Angeles County. These motions which were not made a part of the record of these proceedings were in each case denied by the court. However, two days later, as the minutes indicate: “The Court, on its own motion, raised the question of the constitutionality of Section 38009.1 of the Health and Safety Code, insofar as that section purports to grant to regional centers the power to file petitions for commitment....”
Oral argument was heard and the court ruled as follows:
“(1) The constitutional due process rights of Respondents, as mandated by the Federal and State Constitution, would be violated if a non-governmental agency were permitted to file a petition against *450 Respondents which would serve as the basis for their commitment, and thus of their loss of freedom.
“(2) The Children’s Hospital Regional Center is a non-governmental agency.
“(3) Therefore, the Children’s Hospital Regional Center does not have the power to file the petition now before this court.
“(4) Even assuming that the Children’s Hospital Regional Center had such power to file the petition, the constitutional due process rights of Respondents would be violated if private counsel were empowered to present the evidence necessary to the commitment, and the consequent loss of freedom by Respondents. The only attorneys who may be empowered to prosecute cases where the Respondent may lose his freedom are those employed by and therefore responsible to, a governmental agency.
“(5) In order to give petitioner opportunity to seek appellate review of this order, the effect of this order is stayed until June 27, 1977.”
On June 23, 1977, this court issued its temporaiy stay order staying the order to permit consideration of the petitions for -writ of mandate and on July 29, 1977, an alternative writ was issued in both cases directing the court to hold a hearing to determine the merits of the petitions or show cause why a peremptory writ of mandate should not issue.
Thereafter a return and answer with points and authorities was filed by the County Counsel of Los Angeles County on behalf of respondent court. No response was filed on behalf of real parties in interest. However, pursuant to leave granted by this court an amicus curiae brief was filed on behalf of an organization of parents of residents of Pacific State Hospital, Parents Coordinating Council and Friends of Pacific State Hospital. The return and answer of respondent court and the brief of amicus curiae both opposed issuance of a peremptoiy writ upon the same basis stated by the court in its ruling, so no new issues were injected by either brief, Consequently the narrow question presented by the petitions is whether the superior court is empowered to hear and determine petitions to commit developmentally disabled adults brought by regional centers and prosecuted on their behalf by private counsel.
*451 Since the alternative writ was granted the Legislature has adopted emergency legislation effective upon signature of the Governor, which occurred Friday, September 23, 1977, which in effect repealed the legislation pursuant to which the superior court petitions were filed and placed the control of further proceedings in such matters in the hands of the district attorney or county counsel if designated in his place. This legislation -enacted as Statutes 1977, chapter 984, repealed both sections 38009:1 and 38009.2 of the Health and Safety Code and in their place added new sections to division 6 of the Welfare and Institutions Code governing admissions and judicial commitments. Insofar as pertinent the added sections are new Welfare and Institutions Code sections 6513, 6514 and 6519.
Section 6513 contains the same provisions as Health and Safety Code section 38009.1 for assessment by regional centers of developmentally disabled, nonprotesting or voluntary residents of state hospitals who request release but it alters the function of the regional centers with respect to petitions for commitment to that of requesting “the district attorney or the county counsel, when the board of supervisors has delegated such duty ... to file a petition seeking commitment to the State Department of Health.” New section 6514 states the procedure and the standard for determination of petitions filed pursuant to section 6513.-These provisions are substantially the same as those contained in former Health and Safety Code section 38009.2.
More significantly, however, new section 6519 provides as follows: “6519. At any judicial proceeding under the provisions of this division, allegations that a person is (a) a danger to others, (b) a danger to himself, or (c) unable to provide safely for his basic personal needs for food, shelter and clothing, and is unable to protect himself from ordinary threats to life, health, or safety as a result of a developmental disability, shall be presented by the district attorney for the county, unless the board of supervisors, by ordinance or resolution, delegates such duty to the county counsel.” (Italics added.)
The urgency provision of the bill adopting the new sections includes the following: “The provisions of this bill are necessary to ensure, at the earliest possible time, constitutional rights to the developmentally disabled under the provisions of Chapter 1364 to Chapter 1373, inclusive, of the Statutes of 1976, which became effective on January 1, 1977.”
*452 The result of the amendments now included in chapter 984 is to eliminate from the Health and Safety Code all provisions authorizing judicial proceedings upon petitions to commit developmentally disabled persons and to include all such provisions in part 2 of division 6 of the Welfare and Institutions Code, which govern judicial commitments.
The above quoted urgency provision states that the Legislature intends to eliminate all possible violations of constitutional rights of the developmentally disabled and thus makes it clear that the Legislature intends the remedial provisions of the new sections to take effect immediately and to apply to pending proceedings. (In re Marriage of Bouquet, 16 Cal.3d 583, 588 [128 Cal.Rptr. 427, 546 P.2d 1371].) Consequently, in any further proceedings in the superior court any allegations upon the basis of which real parties in interest could be committed will necessarily have to be presented by the District Attorney for the County of Los Angeles, unless the board of supervisors by ordinance or resolution delegates such duty to the county counsel.
Such being the case, this court cannot order the trial court to hear the petitions unless they are adopted by the district attorney or county counsel as petitions to be-presented by one or the other of them.'Nothing in the trial court’s orders suggests that if the district attorney or county counsel should adopt or refile such petitions that it would decline to hear them. The petitions expressly state the regional center’s recommendation that the real parties in interest be committed. Consequently it may be assumed that petitioner will request the district attorney or county counsel to take such action as is necessary to implement such recommendation. If this is done and the district attorney or county counsel concurs in the recommendation, there is nothing in the record to suggest that the respondent court will not exercise its jurisdiction. No reason appears, therefore, for this court to direct the respondent court to do so.
Such a direction would be particularly inappropriate in this case inasmuch as the briefs submitted in this court have been limited to the very narrow issue (now mooted) upon which the court’s order was based and no briefs have been filed in behalf of the real parties in interest supporting the court’s refusal to act on bases other than those specified in the order. Any attempt by this court to direct the future course of proceedings in the trial court would necessarily determine issues in respect of which such parties have not been heard in this court.
*453 For the same reason we refrain from passing on the abstract question whether the trial court erroneously declined to exercise jurisdiction under former Flealth and Safety Code sections 38009.1 and 38009.2. To do so we would again be obliged to dispose of issues in respect of which real parties in interest have not been heard. If the trial court was without jurisdiction for any reason, its refusal to act does not call for the intervention of this court regardless of whether the reason assigned by the court was correct. “This, however, does not compel reversal of the judgment. ‘The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theoiy of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.’ (Davey v. Southern Pacific Co. (1897) 116 Cal. 325, 329 [48 P. 117].)” (D’Amico v. Board of Medical Examiners, 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)
Any adjudication that the trial court erroneously failed to exercise its jurisdiction would therefore require resolution of all questions inherent in the court’s exercise of jurisdiction pursuant to former Health and Safety Code sections 38009.1 and 38009.2.[5]
We therefore conclude that a peremptory writ should be denied upon the grounds above stated, to wit, that the recent legislation precludes granting the relief sought and in effect moots the petition inasmuch as the court has not indicated that it will decline to exercise jurisdiction if the district attorney or county counsel acts to adopt and present the allegations to the court.
*454 The peremptory writ is denied. The alternative writ is hereby discharged.
Allport, Acting P. J., and Loring, J.,* concurred.

 The hospital is a nonprofit corporation, one function of which is acting as a regional center for persons with developmental disabilities pursuant to contract with the state Department of Health as provided in Health and Safety Code section 38200 et seq.

 Developmental disability is defined in Health and Safety Code section 38010 as follows: “(a) ‘Developmental disability’ means a disability which originates before an individual attains age 18, continues, or can be expected to continue, indefinitely, and constitutes a substantial handicap for such individual. As defined by the Director of Health, in consultation with the Superintendent of Public Instruction, this term shall include mental retardation, cerebral palsy, epilepsy, and autism. This term shall also include handicapping conditions found to be closely related to mental retardation or to require treatment similar to that required for mentally retarded individuals, but shall not include other handicapping conditions that are solely physical in nature.”

 As of the date of the petitions, section 38120 had been renumbered section 38450. That section applied to “[e]very adult who is or has been admitted or committed to a state hospital ... as a developmentally disabled patient” and granted the “right to a hearing by writ of habeas corpus for his release . . . after he or any person acting on his behalf makes a request for release.” The procedure for judicial review by writ of habeas corpus is set forth in section 38451, as is the standard for determining whether the person requesting release is entitled thereto. In this connection section 38451 provides: “If the *449 court finds (a) that the adult requesting release or for whom release is requested is not developmentally disabled, or (b) that he is developmentally disabled and that he is able to provide safely for his basic personal needs for food, shelter, and clothing, he shall be immediately released. If the court finds that he is developmentally disabled and that he is unable to provide safely for his basic personal needs for food, shelter, or clothing, but that a responsible person or a regional center or other public or private agency is willing and able to provide therefor, the court shall release the developmentally disabled adult to such responsible person or regional center or other public or private agency, as the case may be, subject to any conditions which the court deems proper for the welfare of the developmentally disabled adult and which are consistent with the purposes of this division.”

 Section 38009.2, as of the date of the petitions in the superior court, provided the procedure and the standard for the commitment of developmentally disabled persons with respect to whom petitions were filed by regional centers pursuant to section 38009.1. It was the latter section which authorized evaluation by regional centers upon request for discharge by developmentally disabled persons residing in state hospitals falling in the category of “developmentally disabled, nonprotesting or voluntaiy residents.” All persons so residing who had “not been judicially committed” were deemed nonprotesting residents.

 This would involve the court in the complex issue, not briefed by any of the parties, as to which code sections governed proceedings to recommit developmentally disabled persons who. like the real parties, had been judicially committed. Compare in this respect (1) former Health and Safety Code sections 38009.1 and 38009.2 which refer only to a “developmentally disabled person residing in a state hospital who has not been judicially committed” (italics added); (2) section 38450 which specifically applies to “[e]verv adult who is or has been admitted or committed to a state hospital ... as a developmentally disabled patient” (italics added): and (3) Welfare and Institutions Code sections 6500.1 and 6502 governing recommitment of developmentally disabled persons who have been committed as mentally retarded persons.

 Assigned by the Chairperson of the Judicial Council.