Opinion
WALSH, J.
Since 1872, California law has allowed the civil compromise of certain misdemeanor offenses if a criminal defendant adequately compensates the person injured for all costs incurred. (Pen. Code, §§ 1377-1379.) Upon proof of compensation and satisfaction of the injured person, the court can dismiss the criminal charges against the defendant.
In the instant case, the criminal defendant sought dismissal of his misdemeanor charge of false imprisonment for an act which occurred on January 3, 2003, against a minor who was 14 years old at the time. The trial court found that a civil compromise was permissible and dismissed the criminal charge against defendant. The People now appeal this ruling and argue that a civil compromise was not available for defendant’s offense because the victim was a child.[1]
*Supp. 12 Here, we will conclude that, though a civil compromise may be permissible where the crime was committed upon a “child,” it is prohibited when the offense meets the description of any conduct listed in Penal Code sections 647.6 (annoying or molesting children), and 11165.6 (child abuse or neglect). Further, we conclude that a civil compromise is prohibited for any conduct described by Penal Code section 11165.6, even in the absence of any caretaking, custodial, or familial relationship between the defendant and the child victim, except where expressly stated otherwise.
The issue of whether the charged crime falls within the conduct described by Penal Code sections 647.6 and 11165.6 is a factual one to be determined at a hearing in the trial court. That determination was not made here; therefore, we reverse and remand.

Statement of Facts

The following facts are based upon the police report contained in the record.
On January 3, 2003, the minor[2] was selling newspaper subscriptions door to door. The minor knocked on the door of the apartment of Ihsan Gokcek (Respondent) and made contact with his wife, Ebru Gokcek. The minor was unable to communicate with Mrs. Gokcek, who could not speak English well. Mrs. Gokcek closed the door, and the minor remained a few minutes, believing that she had gone to get her checkbook. According to Mrs. Gokcek, she had tried to tell the minor that she was not interested and became concerned when the minor remained after she closed the door. She stated that she became afraid and decided to call her husband, who was on his way home.
As the minor left, he was confronted by Respondent, who appeared upset, accused him of scaring his wife, and asked what the minor was doing at the apartment complex. The minor became afraid and ran off. Respondent pursued him.
The minor ran into an Oil Changers auto shop, where he retreated into the shop’s office. Respondent caught up with the minor and put him into a choke hold from behind. The minor screamed for help from the Oil Changers employees. According to the minor, Respondent held him tight enough for him to feel “some pain.” The employees intervened and separated the parties.
*Supp. 13 As Respondent left, the minor and an employee claimed that Respondent stated, that, if the minor ever came back, Respondent would “kick [his] black ass.”
To the police, Respondent denied stating any racial epithets, but acknowledged chasing the minor. He stated that he was upset because his wife was frightened. Respondent claimed that he chased the minor because he felt that his flight from the complex revealed consciousness of guilt of some crime or misrepresentation. Respondent admitted to grabbing the minor by the shoulders, but denied placing him in a choke hold.
The investigating officer examined the minor’s neck and saw “no visible injuries” to his throat. The minor refused paramedics and said he was fine.

The Facts and Record Relating to the Civil Compromise

Pursuant to a June 23, 2004, order of the appellate division, the record was augmented with a declaration of the minor’s father, John R. In this undated declaration, Mr. R. states that he was contacted by Respondent’s trial attorney on behalf of Respondent to consider a civil compromise. Mr. R.’s declaration then states:
“I have agreed to a civil compromise in this matter if approved by the court so that Mr. Gokcek will pay our family the sum of $4,000, that sum to include any claims due for any civil action and damages to which we may be entitled.”
Mr. R. states that he has accepted Respondent’s apology and that “I am signing this declaration because Mr. Gokcek has no prior record and because I believe this resolution will benefit our family and society more than a continuation of the criminal proceedings.”
Mr. R. further acknowledges that he has received $4,000 by check.
On December 13, 2003, the parties appeared before the trial judge to consider Respondent’s motion for a civil compromise. The People opposed the motion. In the People’s opposition papers, the sole objection raised to the compromise was that the compromise could not be applied to child victims. At the hearing, the People apparently attempted to argue that the compromise could not apply to child victims who suffered an injury other than an accidental injury.
The court rejected the People’s arguments and found that the civil compromise statute was applicable because the charged crime of misdemeanor false *Supp. 14 imprisonment “is not the type of charge that contemplates any kind of physical injury” and that violation of Penal Code sections 236 and 237 is not “something that is covered by these sections.”
The court then ruled, “So I am willing to approve the compromise, but I won’t dismiss the charge until the defendant does 100 hours of community service and also does 20 hours of anger management counseling.” In clarifying the need for Respondent’s presence, the court further stated, “all I have done is approved the compromise. I haven’t dismissed the charge.”
The deputy district attorney voiced no further objection to this ruling.
At the close of the proceedings, the court again clarified by stating, “So although I approved the compromise, the charge will still be there, and if he doesn’t satisfy me that he has completed it, then we’ll press on with the prosecution.”

The First Appeal

The People appealed the trial court’s December 13, 2003 ruling. However, this court rejected the People’s appeal as untimely because Respondent had not yet been discharged from the case and the record contained no Penal Code section 1385 minute order dismissing the case and stating the reasons for the dismissal.

The January 26, 2005 Hearing

Following this court’s order, the trial court held a hearing in which it formally dismissed the case and issued a minute order under Penal Code section 1385, stating that the dismissal was based upon the civil compromise.
At this hearing, the trial judge reiterated the reasons why he was accepting the civil compromise and dismissing the case. Specifically, the trial judge stated that he disagreed with the People’s argument that the civil compromise could not be used in this case because the victim was a child. Instead, the trial judge concluded that the prohibition against the civil compromise only concerned situations involving crimes against family members:
“Looking at what I believe to be the legislative history that preceded the enactment of those sections, it seems to have been an attempt to cover family relationships to make sure that the people couldn’t civilly compromise their way out of beating their own children or they would have undue influence over the victim.”
*Supp. 15 The trial judge pointed out that Respondent had “absolutely no relationship to the victim” and had “no basis for undue influence over the victim.” In addition, the trial judge indicated that he did not “regard this [the crime] as a particularly severe event.” In approving the compromise, the trial judge concluded he did not believe the civil compromise statute was meant to be read that broadly and that it was intended “to be limited to situations where there was some sort of relationship between the victim and the defendant.”

The People’s Claims on Appeal

On appeal, the People repeat the claim originally raised below that the trial court abused its discretion because it was not permitted to allow a civil compromise where the conduct involved injury to a minor. They further argue, for the first time, that a civil compromise is prohibited where the minor suffered unjustifiable physical pain or mental suffering.
In addition, for the first time, the People raise a claim regarding the use of a hearsay declaration, instead of a personal appearance by the victim; and Respondent claims that the police report is not properly part of the record and should not be considered in this appeal.
DISCUSSION
A. Civil Compromise—Generally
When a crime is only a misdemeanor, and the person injured “has a remedy by a civil action,” the offense may be compromised. (Pen. Code, § 1377; see People v. Tischman (1995) 35 Cal.App.4th 174, 178 [40 Cal.Rptr.2d 650].)
Penal Code sections 1377-1379 govern the rules and procedures for a civil compromise.
Under Penal Code section 1378, the procedure is described. The injured person “appears before the court in which the action is pending at any time before trial,” and acknowledges that he or she has received satisfaction for the injury. {Ibid.) The court then “may, in its discretion, on payment of the costs incurred, order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom.” {Ibid.)
The reasons and factual basis for the order must be set forth in the order and entered in the minutes. (Pen. Code, § 1378; see People v. Stephen (1986) 182 Cal.App.3d Supp. 14, 22 [227 Cal.Rptr. 380]; People v. McWhinney (1988) 206 Cal.App.3d Supp. 8, 11 [254 Cal.Rptr. 205] [both indicating that reasons *Supp. 16 for compromise must be entered in minutes, not just the transcript].) “The order is a bar to another prosecution for the same offense.” (Pen. Code, § 1378.)
There is no requirement in Penal Code sections 1377 to 1379 that the prosecutor join in or agree to a civil compromise.
Penal Code section 1379 indicates that “[n]o public offense can be compromised, nor can any proceeding or prosecution for the punishment thereof upon a compromise be stayed, except as provided in this Chapter.”
B. Prohibited Civil Compromises
According to Penal Code section 1377: “When the person injured by an act constituting a misdemeanor has a remedy by a civil action, the offense may be compromised, as provided in Section 1378, except when it is committed as follows:
“(a) By or upon an officer of justice, while in the execution of the duties of his or her office.
“(b) Riotously.
“(c) With an intent to commit a felony.
“(d) In violation of any court order as described in Section 273.6 or 273.65.
“(e) By or upon any family or household member, or upon any person when the violation involves any person described in Section 6211 of the Family Code or subdivision (b) of Section 13700 of this code.
“(f) Upon an elder, in violation of Section 368 of this code or Section 15656 of the Welfare and Institutions Code.
“(g) Upon a child, as described in Section 647.6 or 11165.6.” (Pen. Code, § 1377, italics added.)
It is subdivision (g) of Penal Code section 1377 that is at issue in this case.
C. The Arguments on Appeal
The People originally argued that Penal Code section 1377, subdivision (g) prohibits civil compromises in any case where the victim was a minor. The *Supp. 17 People then argued, at the first hearing before the trial court and on the first appeal, that section 1377, subdivision (g) prohibits civil compromises in any case where the victim was a minor who suffered physical injury. Now, on the second appeal, the People argue, for the first time, that the prohibition applies to not only a child victim who suffered physical injury but also to a child victim who suffered “unjustifiable physical pain or mental suffering.” Therefore, according to the People, while the minor in this case did not complain of any physical injury, the minor’s report of experiencing pain during the crime prohibits the use of the civil compromise.
Respondent argues that the statutes indicate that a civil compromise is prohibited only in cases involving child sexual abuse or child abuse where the offender is a person in whose care or custody the child has been placed. Respondent, therefore, argues that, since there is no evidence that the minor suffered injury in the instant case or that the minor was in Respondent’s custody, there is nothing prohibiting the use of the civil compromise.
D. The Rules of Statutory Interpretation
“ ‘It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers. Such intention controls if it can be reasonably ascertained from the language used. [Citation.]’ ” (People v. Gomez (1992) 2 Cal.App.4th 819, 825 [3 Cal.Rptr.2d 418], quoting People v. Ashley (1971) 17 Cal.App.3d 1122, 1127 [95 Cal.Rptr. 509].) “ ‘If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to [extrinsic] indicia of the intent of the Legislature ....’” (People v. Talibdeen (2000) 27 Cal.4th 1151, 1154 [119 Cal.Rptr.2d 922, 46 P.3d 388], quoting Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)
However, “ ‘[w]hen the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.]’ ‘ “When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.” ’ ” (People v. Jefferson (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441], quoting Woods v. Young (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455], and Granberry v. Islay Investments (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr. 2d 650, 889 P.2d 970].)
*Supp. 18 E. The Meaning of Penal Code Section 1377, Subdivision (g)
The statutory language of Penal Code section 1377, subdivison (g) contains an ambiguity as it applies to the instant case. A plain reading of Penal Code section 1377, subdivision (g) indicates that the statute prohibits a civil compromise where the offense is committed “[u]pon a child, as described in Section 647.6 or 11165.6.” (Italics added.) The subdivision’s use of the term “as described” followed by specifically enumerated statutes creates the ambiguity, especially in light of the fact that another subdivision of the same statute uses the term “in violation of’ also followed by specifically enumerated statutes.
For instance, subdivision (f) of Penal Code section 1377 prohibits a civil compromise where the offense is committed “[u]pon an elder, in violation of Section 368 of this code or Section 15656 of the Welfare and Institutions Code.” (Italics added.)
Therefore, in contrast to the language in Penal Code section 1377, subdivision (g), subdivision (f) makes clear, by using the term “in violation of,” that a civil compromise is only prohibited for two specifically named offenses committed upon an elder. As a result, under the plain meaning of subdivision (f), all offenses committed against elders are not categorically excluded from being civilly compromised.
On the other hand, Penal Code section 1377, subdivision (g), by using the term “as described,” is unclear, by itself, without reference to the two specifically named statutes. As a result, we must now refer to Penal Code sections 647.6 and 11165.6 to determine the meaning of section 1377, subdivison (g).
Penal Code section 647.6 is a misdemeanor criminal offense prohibiting annoying or molesting a child. Penal Code section 11165.6 is not a criminal offense, in itself, but it defines the types of child abuse or neglect that triggers the reporting requirements under the 1987 Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.). Neither statute offers a specific definition of the term “child.”
As a result, the only reasonable interpretation of subdivision (g) of Penal Code section 1377 is that the Legislature intended to prohibit a civil compromise where the offense was committed against a child in the circumstances “as described in” Penal Code sections 647.6 and 11165.6. *Supp. 19 Therefore, contrary to the People’s initial arguments before the trial court, a civil compromise is not categorically prohibited in all cases where the victim is a child.
Moreover, since Penal Code section 11165.6 is not a chargeable offense and only defines child abuse and child neglect, we find no requirement that a defendant be specifically charged with a crime of child sexual abuse, child abuse, or child neglect. “A court will normally presume that when the Legislature uses different words in the same connection in different parts of a statute that a different meaning was intended.” (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 210 [83 Cal.Rptr.2d 548, 973 P.2d 527], citing Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1117 [81 Cal.Rptr.2d 471, 969 P.2d 564].) The fact that the Legislature used the term “as described in” in Penal Code section 1377, subdivision (g), when it used “in violation of’ in subdivision (f) clearly indicates that the Legislature intended a different meaning. The use of the term “as described in Section 647.6 or 11165.6” in section 1377, subdivision (g) must mean that the underlying facts of the crime need only comport with an offense describable by either Penal Code section 647.6 or 11165.6. Consequently, the issue of whether the conduct is describable by either section 647.6 or 11165.6 requires a hearing to permit inquiry into the underlying facts of the crime for which the civil compromise is sought.
A court may examine the underlying facts of the charged offense to determine whether a civil compromise is precluded by statute. (People v. Moulton (1982) 131 Cal.App.3d Supp. 10 [182 Cal.Rptr. 761].) In Moulton, the Appellate Department of the Los Angeles County Superior Court[3] reversed the trial court’s decision to permit a civil compromise and dismissal of the criminal action in which the defendant had been charged with the offense of grand theft. Though the offense was a “wobbler” offense punishable as either a felony or a misdemeanor, the prosecution elected to file the matter as a misdemeanor. The prosecution objected to the compromise, arguing that the offense could not qualify for a civil compromise because, as a wobbler, the offense necessarily carried “an intent to commit a felony,” a specific prohibition to civil compromise under Penal Code section 1377, subdivision (c). The trial court rejected this argument and any attempt by the prosecution to present facts to prove that the offense was committed with felonious intent and stated: “ ‘where they [the People] have filed the case as a misdemeanor, they have by their action taken out of the case the question *Supp. 20 of whether it was done with felonious intent.’ ” (People v. Moulton, supra, 131 Cal.App.3d at p. Supp. 16.)
The appellate department reversed and concluded that “the prosecutor’s decision to file a charge as a misdemeanor has little if any relationship to the question of whether defendant in the commission of a crime intended ‘to commit a felony.’ ” (People v. Moulton, supra, 131 Cal.App.3d at p. Supp. 17.) In reversing, the court further stated that “the issue of whether defendant had such intention is a factual one to be resolved at a hearing in which both the People and the defendant have a right to present evidence. Thus, in the present case, the trial judge’s refusal to permit inquiry into ‘the underlying facts’ foreclosed such a hearing and was error.” (Id. at p. Supp. 17.)
If it is necessary to consider the underlying facts of the offense to determine whether the offense was committed with felonious intent, regardless of the actual charges, it is equally logical to permit an inquiry into the underlying facts of the offense to determine whether the offense involved child sexual molestation, child abuse, or neglect of a child, regardless of the offense actually charged in the complaint.
Consequently, we hold that the prohibition of civil compromises under Penal Code section 1377, subdivision (g), where the crime was committed upon a “child,” applies only to offenses that meet the description of any conduct listed in Penal Code sections 647.6 and 11165.6. The issue of whether the charged crime falls within the conduct described by sections 647.6 and 11165.6 is a factual one to be resolved at a hearing.
In the instant case, the hearing that took place was insufficient to determine whether Respondent’s offense fell within any of the conduct described by Penal Code sections 647.6 and 11165.6. In the absence of a hearing, or stipulation in substitute thereof, the record is inadequate to determine whether Respondent’s charged crime fell within the conduct described by section 647.6 or section 11165.6. Therefore, we reverse the order granting the civil compromise and dismissing the case and remand the matter for the trial court to conduct a hearing consistent with this opinion.
F. The Scope of Penal Code Section 11165.6
In order to provide guidance to the trial court, we also resolve Respondent’s claim that the provisions of Penal Code section 11165.6 are only applicable to persons who are in some kind of caretaking role of the child victim. We find no support for Respondent’s position.
As it read in 2003, when the charged offense was alleged to have been committed in this matter, Penal Code section 11165.6 stated: “As used in this *Supp. 21 article, the term ‘child abuse or neglect’ includes physical injury inflicted by other than accidental means upon a child by another person, sexual abuse as defined in Section 11165.1, neglect as defined in Section 11165.2, willful cruelty or unjustifiable punishment as defined in Section 11165.3, and unlawful corporal punishment or injury as defined in Section 11165.4. ‘Child abuse or neglect’ does not include a mutual affray between minors. ‘Child abuse or neglect’ does not include an injury caused by reasonable and necessary force used by a peace officer acting within the course and scope of his or her employment as a peace officer.” (Pen. Code, § 11165.6, as amended by Stats. 2001, ch. 133, § 2.)
Under a plain reading of Penal Code section 11165.6 and the other statutes referenced therein, with the exception of Penal Code section 11165.2, there is no language limiting the conduct described in section 11165.6 only to persons responsible for the care or welfare of the child. Consequently, section 11165.6’s definition of “child abuse or neglect” includes sexual abuse of any child, nonaccidental physical injury inflicted upon any child, the willful cause, infliction, or allowance of any child to suffer unjustifiable physical pain or mental suffering, or the infliction on any child of cruel or inhuman corporal punishment or injury resulting in a traumatic condition committed by any person. Respondent can point to no statutory law, case law, or legislative history which would indicate otherwise.
The trial court, in concluding that the Legislature intended to limit Penal Code section 1377, subdivision (g) to situations where there was some sort of custodial relationship between the victim and the defendant, might have relied on the following 1997 Assembly Committee on Public Safety analysis for the bill that added subdivision (g) (Stats. 1997, ch. 243, § 1 (Sen. Bill No. 97 (1997-1998 Reg. Sess.) and related legislation in Stats. 1997, ch. 18, § 1 (Sen. Bill No. 115 (1997-1998 Reg. Sess.)). The analysis quoted the author of Senate Bill No. 97, Senator Alpert: “An example of a crime where civil compromise works is vandalism. Typically a perpetrator may publicly apologize and agree to pay for the damages caused. Examples of crimes where it isn’t appropriate, but is currently allowed, are child and elder abuse. Domestic violence, child abuse and elder abuse offenses almost always involve victims, who because of their status or condition, or relationship to the defendant, may be unduly influenced to civilly compromise.
“We can no longer allow civil compromise in these cases. The message that civil compromise continues to broadcast is that abuse of those closest to us is not a serious crime, only a civil dispute or a personal matter to be taken care of quietly, with a monetary payoff or apology. That message is the cause of countless tragedies in San Diego County.” (Assem. Com. on Pub. Safety, analysis of Sen. Bill No. 97 (1997-1998 Reg. Sess.) as amended June 17, 1997, pp. 1-2.)
*Supp. 22 However, “[t]he general rule is that, in construing a statute, we do not consider the motives or understandings of either its author or the individual legislators who voted for it.” (Bravo Vending v. City of Rancho Mirage (1993) 16 Cal.App.4th 383, 402, fn. 11 [20 Cal.Rptr.2d 164], citing In re Marriage of Bouquet (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371], and California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856].) This is true even where the statement is from the bill’s author because “no guarantee can issue that those who supported his proposal shared his view of its compass.” (In re Marriage of Bouquet, supra, 16 Cal.3d at pp. 589-590.) However, a legislator’s statement can be relevant to statutory interpretation where the statement “is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion.” (California Teachers Assn. v. San Diego Community College Dist., supra, 28 Cal.3d at p. 700.)
In the legislative histories of Senate Bill No. 97 or the related legislation of Senate Bill No. 115 (authored by Sen. Burton), there is nothing indicating that Senator Alpert’s personal opinion formed part of the Legislature’s discussion or subsequent amendments to the bill regarding the bill’s applicability to caretaking or familial relationships. Therefore, the above quoted statement reveals only the author’s personal opinion and is not a proper subject for consideration in determining the Legislature’s intent in amending Penal Code section 1377 to add subdivision (g) in 1997.
Except where so expressly stated, “child abuse,” as defined by Penal Code section 11165.6, does not include the element that the abuse be inflicted by a person in whose care the child was entrusted as a caretaker, custodian, or family member for purposes of the prohibition against civil compromise found in Penal Code section 1377, subdivision (g).
The trial court, on remand, is directed to conduct its hearing consistent with the definitions described, ante.
Since we reverse on the grounds that the trial court might not have had jurisdiction to apply the civil compromise and remand for further proceedings, we need not address the remaining issues of whether hearsay evidence and the police report were properly admitted or considered in allowing the civil compromise.
*Supp. 23 DISPOSITION
Accordingly, the order approving the civil compromise is reversed and the matter is remanded for proceedings consistent with this opinion.
Cunningham, P. J., and Huber, J., concurred.

 We will use the terms “child” and “minor” interchangeably as the statutes relevant to this case define the term “child” as someone under 18 years of age. (Fam. Code, § 6500; Pen. Code, §§ 647.6, subd. (a), 11165.)

 We do not disclose the minor victim’s name and refer to him as “the minor,” not out of disrespect, but to afford the victim a measure of privacy.

 While, as an opinion of another appellate division, Moulton is not binding upon this court, it can be considered as “persuasive” authority. (People v. Corners (1985) 176 Cal.App.3d 139, 146 [221 Cal.Rptr. 387].)