[No. B153812. Second Dist., Div. Four. July 25, 2002.]

KATHLEEN RILEY et al., Plaintiffs and Appellants, v.
HILTON HOTELS CORPORATION et al., Defendants and Respondents.

## COUNSEL

Schreiber & Schreiber, Edwin C. Schreiber and Eric A. Schreiber for Plaintiffs and Appellants.

McNamara, Spira & Smith, Michael P. McNamara and David Campbell Smith for Defendants and Respondents.

## OPINION

**EPSTEIN, J.**—A local ordinance was amended during the pendency of a lawsuit to recite that it does not impose the duty that the defendants allegedly breached. In this case, we consider whether the amendment is in fact a substantive change in the law, and if so whether the language of the amending ordinance, and the scant legislative history of record, are adequate to give the change retroactive application. The trial court ruled that the law was indeed changed, but that the change was retroactive. We reverse. We agree with the trial court that the law was substantively changed, but we find no basis in the plain language of the ordinance or its legislative history to apply the change to past conduct.

### FACTUAL AND PROCEDURAL SUMMARY

In 1962, the Beverly Hills City Council (Council) adopted an off-street parking ordinance, which included the following definition: "For the purposes of this chapter, the words and phrases set forth in this section are

defined as set forth herein, unless the context clearly indicates a different meaning is intended: [¶] . . . [¶] (b) '[p]arking facility' shall mean an off-street facility used for the parking of motor vehicles." (Beverly Hills Ord. No. 1152, § 6-16.01.) The ordinance required any parking facility seeking to charge a fee for parking to display readily visible signs listing the rates and maximum fees. It specified that it was the responsibility of the parking facility's operator and attendants to comply with its terms. This ordinance was codified, starting with section 6-16.01 of the Beverly Hills Municipal Code.[1] (*Ibid.*)

At some point, the ordinance was recodified to its present numbering, beginning at section 4-4.201, and the term "parking facility" was replaced with "vehicle parking facility" throughout the relevant sections. The language prefatory to the definitions was removed, but the definition of "vehicle parking facility," in section 4-4.201(b), remained "an off-street facility used for the parking of motor vehicles." The signage requirement, in section 4-4.202, was expanded to require that the signs be "clearly visible to the motorist from the street prior to entering such facility . . . ." The responsibility for compliance, in section 4-4.206, remained with attendants and operators.

This was the substance of the ordinance when Kathleen Riley, suing individually and on behalf of a class of persons similarly situated, filed the present suit. Named as defendants were hotel operators Hilton Hotels Corporation and Hilton Hotels U.S.A., Inc. In the first amended complaint, plaintiffs alleged that defendants operated a vehicle parking facility, charged a fee, but did not provide reasonable notice or the notice required under section 4-4.202.

On May 1, 2001, the Council adopted a new ordinance (the 2001 ordinance) that amended section 4-4.201(b) to read: " 'Vehicle parking facility' shall mean an off-street parking facility, where the primary use of the property is to accommodate the parking of motor vehicles by members of the public. A vehicle parking facility does not include an off-street parking facility that accommodates the parking of motor vehicles by the occupants, customers, clientele and employees of an on-site or adjacent structure where the primary use of that structure is for office, retail or hotel purposes." An uncodified provision, section 2, declared: "This ordinance is declarative of existing law and does not alter the meaning of Section 4-4.201(b) as adopted on March 20, 1962." (Beverly Hills Ord. No. 01-0-2375, § 2.)

Three days later, defendants moved for summary adjudication on the issue of duty. They argued they breached no duty imposed by sections 4.4-202 and

---

[1] All undesignated section references are to the Beverly Hills Municipal Code, unless otherwise indicated.

4.4-206. The trial court agreed, ruling that although the 2001 ordinance did effect a change of law, it was the intent of the Council that it be applied retroactively. The court also ruled that retroactive application neither offended due process nor unconstitutionally impaired any contract between the parties. As construed by the court, the retroactive application meant that defendants never had a duty under section 4.4-202 and 4.4-206, leaving only the common law duty of reasonable notice as a basis for liability.

Plaintiffs amended their complaint again. The second amended complaint alleged in each of the 10 causes of action that liability was incurred as a result only of defendants' violation of sections 4.4-202 and 4.4-206, eliminating the common law theory of lack of notice. Based on the amended ordinance, defendants moved for judgment on the pleadings. The motion was granted, judgment was entered in favor of defendants, and plaintiffs filed this timely appeal.

## DISCUSSION

The basis for defendants' motion for judgment on the pleadings was that the second amended complaint does not state facts sufficient to constitute a cause of action against them. (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) ▮ We review de novo the order granting the motion for judgment on the pleadings. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720].) In determining whether the complaint withstands the motion, we accept as true plaintiffs' factual allegations. (*Ibid.*) The trial court incorporated the summary adjudication ruling and reasoning in its order granting judgment on the pleadings. We also review these legal conclusions de novo.

▮ Defendants argue the trial court erred in rejecting their argument that the 2001 ordinance was declarative of existing law. ▮ A finding that the ordinance is merely a clarification of existing law would resolve this appeal because a clarification may be applied to transactions predating its enactment without being considered retroactive. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) The clarified law is merely a statement of what the law has always been. (*Ibid.*) ▮ We agree with the trial court that this rule has no application to the present case.

As we have discussed, section 2 of the 2001 ordinance stated: "This ordinance is declarative of existing law and does not alter the meaning of Section 4-4.201(b) as adopted on March 20, 1962." This statement is the beginning, but not the end, of our analysis. ▮ "[A] legislative declaration of an existing statute's meaning is neither binding nor conclusive in

construing the statute. Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts." (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 244.)

A similar situation arose in *California Emp. etc. Com. v. Payne* (1947) 31 Cal.2d 210 [187 P.2d 702]. A provision was added to the Unemployment Insurance Act in 1939 declaring that there was no limitations bar against the California Employment Stabilization Commission enforcing payment of unemployment insurance contributions against an employer who had not filed a return with the commission. (*Id.* at p. 213.) The provision had been amended in 1943, suspending the statute of limitations only if the employer acted with intent to evade the provisions of the Unemployment Insurance Act. (*Ibid.*) The amending measure "further provided that 'the amendment . . . is hereby declared to be merely a clarification of the original intention of the legislature rather than a substantive change and such section shall be construed for all purposes as though it had always read as hereinbefore set forth.' " (*Ibid.*) The court refused to take the Legislature at its word on the issue of statutory construction: "[T]he language of the 'clarification' provision in this case cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms." (*Id.* at p. 214.)

Defendants argue that we should give effect to the Council's statement that the restricted definition of "vehicle parking facility" in the 2001 ordinance is declarative of what the 1962 law provided. They point to a recent statement by the city attorney that the 1962 ordinance was "intended to apply solely to stand-alone parking lots where parking is the primary use of the site" and never "intended to apply to the vehicular entrances to hotels."

"[T]here is little logic and some incongruity in the notion that one Legislature may speak authoritatively on the intent of an earlier Legislature's enactment when a gulf of decades separates the two bodies." (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 244.) There is even less logic in the notion that the city attorney in 2001, apparently unaided by any legislative history, may speak authoritatively on the intent of the Council in 1962. We find greater logic and less incongruity in giving effect to the plain terms of the 1962 ordinance.

As we have mentioned, the paragraph prefacing the definition of "parking facility" in the 1962 enactment stated: "For the purposes of this chapter, the words and phrases set forth in this section are defined as set forth herein, unless the context clearly indicates a different meaning is intended[.]"

(Beverly Hills Ord. No. 1152, § 6-16.01.) The plain language of the 1962 definition provided for no exclusions. In oral argument before the trial court, defendants contended that the placement of the 1962 ordinance in a chapter of the Municipal Code entitled "Parking Lots and Garages" is "objective support for the idea that hotels and offices and retail uses were excluded from the scope of the definition of vehicle parking facility." They found further objective support in the lack of enforcement of the ordinance against hotels until plaintiffs complained. The construction of an ordinance by those charged with its enforcement is only entitled to deference if the ordinance is ambiguous and "the construction has a reasonable basis in the text of the legislation or the policy which underlies it." (*Department of Health Services v. Civil Service Com.* (1993) 17 Cal.App.4th 487, 501 [21 Cal.Rptr.2d 428].) The chapter title is not the clear indication called for in 1962. Lacking such an indication, there is no ambiguity or basis in text or policy from which those charged with enforcement could draw their construction. We also note that, on appeal, defendants do not urge these grounds as support for their interpretation of the Council's intent in 1962.

As in *California Emp. etc. Com. v. Payne, supra,* 31 Cal.2d 210, we cannot agree that the new substantive provision, here a new exception, always was the law. More specifically, we cannot say that when, in 1962, the Council defined "parking facility" as "an off-street parking facility used for the parking of motor vehicles," it actually meant to exclude any parking facility "that accommodates the parking of motor vehicles by the occupants, customers, clientele and employees of an on-site or adjacent structure where the primary use of that structure is for office, retail or hotel purposes." Despite the Council's pronouncement to the contrary nearly four decades later, the 2001 ordinance substantively changed the definition adopted in 1962.

Defendants argue, *California Emp. etc. Com.* notwithstanding, that courts routinely give effect to the expressed legislative intent to clarify existing law rather than change the law. But in each case cited by defendants, the court found the amendment or statute was in fact a clarification of the prior law, and not a substantive change declared to be a clarification by its enactors. (See *City of Los Angeles v. Rancho Homes, Inc.* (1953) 40 Cal.2d 764, 771 [256 P.2d 305] [construction of original statute to intend meaning made express in amendment "reasonable . . . and in accordance with the announced policy underlying the section"]; *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 401 [276 Cal.Rptr. 524] [prior law was ambiguous; amendment resolved ambiguities]; *Marina Village v. California Coastal Zone Conservation Com.* (1976) 61 Cal.App.3d 388, 393 [132.Cal.Rptr. 120] [clarification to regulation resolved ambiguity and unintended inconsistency

between regulations and enabling statute]; *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1510 [46 Cal.Rptr.2d 822] [concluding after independent analysis of prior law that amendment "did no more than clarify existing law"]; *Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 252 [concluding after independent analysis of state of the law before a statute that "the Legislature's action did not effect a change in the law"].)

Because we conclude that the 2001 ordinance changed the law, we must determine whether the language of the enactment demonstrates an intent by the Council that the change be retroactive. ■ "[S]tatutes do not operate retrospectively unless the Legislature plainly intended them to do so." (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 243.)

"Although statutes 'are generally presumed to operate prospectively and not retroactively,' this presumption is rebuttable. [Citation.] '[W]hen the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent unless due process considerations prevent us.' [Citation.] We may infer such an intent from the express provisions of the statute as well as from extrinsic sources, including the legislative history." (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 221-222 [105 Cal.Rptr.2d 407, 19 P.3d 1148].)

■ In *Preston,* the court based its holding that a statute should be applied retroactively in part on a provision stating: " 'It is the intent of the Legislature in enacting this act to clarify the application [of an existing law].' " (*Preston v. State Bd. of Equalization, supra,* 25 Cal.4th at p. 222.) That statement "strongly suggests" that the statute should apply to causes of action existing on the date of enactment (i.e. retroactively), but the court did not end its analysis there. (*Ibid.*) It also concluded that the Legislature intended a retroactive application, but only when, upon examination of the legislative history, it found the Legislature added the intent provision despite (1) knowledge that "the bill may partially change existing law," and (2) awareness that the provision may result in retroactive application. (*Id.* at p. 223.)

It was necessary for the *Preston* court to resort to extrinsic indicia of intent such as legislative history because the Legislature's intent was not clear from the express terms of the statute. (See *Preston v. State Bd. of Equalization, supra,* 25 Cal.4th at p. 222.) Similarly, we look to the express provisions of the 2001 ordinance, and to extrinsic sources if necessary, to determine the Council's intent.

Section 2 of the 2001 ordinance states that the new enactment is "declarative of existing law *and does not alter the meaning of Section 4-4.201(b) as adopted on March 20, 1962.*" (Italics added.) Either the Council is correct and the law is unchanged—a conclusion we have rejected—or it is incorrect. What section 2 does not do is expressly declare the change is retroactive. Nor may we infer an intent to rebut the presumption of prospective application. Even if the Council's intent were unclear, there are no extrinsic indicia that it intended the change to be applied retroactively.[2] There is no evidence of awareness that the 2001 ordinance changes the 1962 ordinance, and the only analysis on record is the city attorney's statement that the 2001 ordinance does *not* change existing law. The Council not only failed to express an intent to amend the ordinance retroactively, it expressly disclaimed an intent to change the meaning of the 1962 ordinance. The trial court erred in finding otherwise.

The trial court granted defendants' motion for judgment on the pleadings based on its previous grant of defendants' motion for summary adjudication, which in turn was based on the finding that the ordinance applies retroactively. Because we find the ordinance changes the law and does not apply retroactively, we reverse the grant of defendants' motion for judgment on the pleadings. We need not address the arguments concerning whether retroactive application offends due process or unconstitutionally impairs any contract between the parties.

■ Finally, defendants argue that a separate basis for affirmance is the absence of a private right of action under the Municipal Code. The comprehensive regulatory scheme for violations of the Municipal Code, defendants assert, indicates the Council's intent to occupy the enforcement field to the exclusion of private lawsuits. However, Government Code section 36900, subdivision (a), expressly permits violations of city ordinances to be "redressed by civil action." Both our Constitution and the Government Code prohibit giving effect to city ordinances in conflict with state law. (Cal. Const., art. XI, § 7; Gov. Code, § 37100.) Defendants refer us to no state law that allows a city to abrogate the right of redress created in the Government Code. We decline to read into the Municipal Code an intent to create an impermissible conflict with state law by abrogating the right to a civil action created by the Government Code.

---

[2]Defendants claim that the Council and city attorney "unequivocally indicated an intent that the Amended Ordinance apply to all existing causes of action." The record does not support this assertion.

## DISPOSITION

The judgment is reversed. The cause is remanded to the trial court for further proceedings. Plaintiffs are to have their costs on appeal.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 16, 2002.