[No. B156195. Second Dist., Div. Seven. Mar. 4, 2003.]

ADAM PLOTKIN, Plaintiff and Appellant, v.
SAJAHTERA, INC., Defendant and Respondent.

## COUNSEL

Schreiber & Schreiber, Edwin C. Schreiber and Eric A. Schreiber for Plaintiff and Appellant.

Kaye Scholer, Jeffrey S. Gordon and Bryant S. Delgadillo for Defendant and Respondent.

OPINION

WOODS, J.—Plaintiff Adam Plotkin filed a lawsuit in class action[1] against defendant Sajahtera, Inc., the owner and operator of the Beverly Hills Hotel (the Hotel). Plotkin had been an overnight guest at the Hotel. The gravamen of the complaint was that the Hotel failed to give members of the public notice of the valet parking charge. The court entered a judgment in favor of the Hotel after granting two separate summary adjudication/ summary judgment motions in its favor. We affirm.

FACTUAL AND PROCEDURAL SYNOPSIS

I. *The Complaint*

The operative pleading, the second amended complaint (SAC), alleged nine causes of action based upon violations of the Beverly Hills Municipal Code (BHMC) and common and/or statutory law. The complaint is based on two theories: (1) valet parking at the Hotel violated certain provisions of the BHMC that govern the size and very specific location of signs for parking charges at a vehicle parking facility; and (2) independent of the BHMC, the Hotel failed to provide Plotkin notice of the $21 a night charge for valet parking during his stay at the Hotel.

II. *First Summary Adjudication Motion*

The SAC is based in part on alleged violations of BHMC[2] section 4-4.202 and section 4-4.206. Section 4-4.202 provides that a "vehicle parking facility" shall display at least two very specific rate signs, in very specific locations, and that a patron cannot be charged a fee in excess of the amount designated on the sign.

At the time the original complaint was filed, section 4-4.201(b) defined "vehicle parking facility" as "an off-street facility used for the parking of motor vehicles." Plotkin alleged that the Hotel's valet drop-off station was subject to regulation as a "vehicle parking facility" as set forth in sections 4-4.202 and 4-4.206.

On May 1, 2001, after the original complaint was filed, the Beverly Hills City Council passed an ordinance amending section 4-4.201(b) (the Amended Ordinance). The Amended Ordinance stated: " '(b) 'Vehicle parking facility' shall mean an off-street parking facility, where the primary use

---

[1]No class had been certified at the time of the subject motions.
[2]Unless otherwise noted, all section references are to the BHMC.

of the property is to accommodate the parking of motor vehicles by members of the public. A vehicle parking facility does not include an off-street parking facility that accommodates the parking of motor vehicles by the occupants, customers, clientele and employees of an on-site or adjacent structure where the primary use of that structure is for office, retail or hotel purposes.'"

The Amended Ordinance also states it is "declarative of existing law and does not alter the meaning of Section 4-4.201(b) as adopted on March 20, 1962."

The legislative history of the Amended Ordinance is found in the official agenda statement of the city council prepared by the city attorney. The agenda statement notes that there had been complaints about the signage at several Beverly Hills hotels and that the Amended Ordinance was to instruct the city's code enforcement personnel on whether the ordinance applied to hotels and whether the warning letters the enforcement personnel had just issued should be withdrawn. According to the agenda statement, "the City Attorney's Office determined that Section 4-4.202 was intended to apply solely to stand-alone parking lots where parking is the primary use of the site"; and "[t]he City Attorney's Office does not believe that the provisions of Section 4-4.202 were ever intended to apply to the vehicular entrances to hotels."

After the city council passed the Amended Ordinance, the Hotel moved for summary adjudication on the grounds it had no duty under, and had committed no wrongful act with respect to, the BHMC and its signage requirements. The motion was directed to the SAC. In opposition, Plotkin argued the gravamen of the SAC was that those persons parking "were never given notice of the fact that there would be a fee to have their cars parked by the valet." Plotkin admitted the issue of whether the BHMC applied to hotels was not dispositive of any cause of action.

The court ruled that despite the express language, the Amended Ordinance was not declarative of existing law but rather effected a change in the law. The court then ruled the city council intended the Amended Ordinance to apply retroactively. After further briefing, the court assumed Plotkin had an independent, vested right to sue for damages under the pre-amended BHMC and ruled there was no due process barrier to retroactive application and no substantial impairment of the contract right. The court then granted summary adjudication ruling the Amended Ordinance applied retroactively so the Hotel had no duty to comply with the signage provisions.

III. *Second Summary Adjudication Motion*

The Hotel moved for summary judgment/summary adjudication on the grounds that as a matter of law, Plotkin was given notice of the valet parking charge, and as the court had previously granted summary adjudication on Plotkin's other theory of liability; the two motions disposed of his entire case.

In support of the motion, the Hotel proffered the following facts, which were undisputed. Plotkin was an overnight guest of the Hotel; at the time he parked his car, Plotkin received a valet parking ticket for his car which stated there was a charge to use the valet parking services and what that charge was; and a copy of the actual notice (i.e., the ticket), which Plotkin had attached as an exhibit to the SAC.

Based on the undisputed facts, the court ruled the parking ticket was sufficient notice of the parking charge and the public was not likely to be deceived by the practice of providing notice via the parking ticket. The court granted summary judgment and entered judgment in favor of the Hotel.

Plotkin filed a timely notice of appeal.

## DISCUSSION

■ "On appeal, we review the trial court's decision to grant or deny the summary judgment motion de novo, on the basis of an examination of the evidence before the trial court and our independent determination of its effect as a matter of law. [Citations.] We are not bound by the trial court's stated reasons or rationale. Instead, we review the summary judgment without deference to the trial court's determination of questions of law. [Citations.] We may consider only those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal. Thus, unless they were factually presented, fully developed and argued to the trial court, potential theories which could theoretically create 'triable issues of material fact' may not be raised or considered on appeal." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 [80 Cal.Rptr.2d 66].)

I. *The Amended Ordinance Was Intended to Operate Retroactively*

■ Subsequent to this appeal, in *Riley v. Hilton Hotels Corp.* (2002) 100 Cal.App.4th 599, 601 [123 Cal.Rptr.2d 157], a sister division of this district held the Amended Ordinance did not apply retroactively. Respondent argues that *Riley* is not binding precedent on this court, it misapplied the law,

and it failed to analyze important evidence in the record. We are not persuaded by the reasoning in *Riley*.

A.   *The Beverly Hills City Council clearly indicated its intention that the amendment to BHMC section 4-4.201(b) apply retroactively.*

█   A statute or ordinance has retroactive effect if it substantially changes the legal effect of past events. (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 281 [32 Cal.Rptr.2d 807, 878 P.2d 566]; *Kizer v. Hanna* (1989) 48 Cal.3d 1, 7 [255 Cal.Rptr. 412, 767 P.2d 679]; *Aktar v. Anderson* (1997) 58 Cal.App.4th 1166, 1182 [68 Cal.Rptr.2d 595].) Statutes do not operate retroactively unless the legislative body enacting the measure clearly indicates its intent that they do so. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209 [246 Cal.Rptr. 629, 753 P.2d 585]; see Civ. Code, § 3 [no part of the Civil Code is retroactive "unless expressly so declared"].) A legislative body's intent with regard to prospective or retroactive application may be determined either from the language in the statute itself or, if the extrinsic sources are sufficiently clear, legislative history. (*Western Security Bank, supra,* at p. 243; *Evangelatos, supra,* at pp. 1209-1210.) The general presumption against retroactive application of statutes is subordinate to "the transcendent canon of statutory construction that the design of the Legislature be given effect." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].)

█   Both the text of amended BHMC section 4-4.201(b), defining "vehicle parking facility" to exclude hotel parking structures, and the legislative history of the Amended Ordinance clearly indicate the Beverly Hills City Council's intent that the May 1, 2001 amendment apply to alleged violations of the city's signage regulations that had occurred prior to the amendment's effective date.

First, the Amended Ordinance expressly states that it is "declarative of existing law and does not alter the [existing] meaning of Section 4-4.201(b) . . . ." Both Division Four of our court in *Riley v. Hilton Hotels Corp., supra,* 100 Cal.App.4th 599, 606, and the trial court in this case rejected the city council's assertion that the amendment simply effected a clarification of existing law. While that conclusion appears correct,[3] this statutory declaration plainly demonstrates an intent that the amendment apply retroactively.

_____

[3]The amendment's substantial narrowing of the definition of "vehicle parking facility" does not necessarily preclude a finding that it merely clarifies, rather than changes, existing law. (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 243 [The purpose of an

■ "[E]ven if the court does not accept the Legislature's assurance that an unmistakable change in the law is merely a 'clarification,' the declaration of intent may still effectively reflect the Legislature's purpose to achieve a retrospective change. [Citation.] . . . Thus, where a statute provides that it clarifies or declares existing law, '[i]t is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment. In accordance with the general rules of statutory construction, we must give effect to this intention unless there is some constitutional objection thereto.' [Citations.]" (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at pp. 244-245; accord, *Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 222 [105 Cal.Rptr.2d 407, 19 P.3d 1148] ["This statement alone [of an intent to clarify existing law] strongly suggests that the Legislature intended for [the sections at issue] to 'apply to all existing causes of action from the date of its enactment,' even if these subdivisions do not, in fact, clarify existing law. [Citations.]"].)

■ Second, the limited legislative history of the amendment to BHMC section 4-4.201(b) confirms the city council's intent to apply the narrow definition of "vehicle parking facility" retroactively. The agenda statement of the city council described several complaints about signage at parking facilities adjoining local hotels and asserted that the amendment merely confirmed that the signage regulations governed only stand-alone parking lots. The city council's stated intent in adopting the amendment was thus to instruct the city's code enforcement personnel that this "clarification" applied to recently issued "warning letters," as well as to future enforcement activity. The agenda statement is additional evidence the legislative body intended the amendment to apply to existing causes of action.[4]

B. *Application of amended BHMC section 4-4.201(b) to existing causes of action is not constitutionally prohibited.*

■ When a legislative body clearly intends a statute or ordinance to operate retroactively, that intent must be enforced unless retroactivity is

---

amendment "need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same. [Citations.] [¶] One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation."].)

[4]Respondent's request for judicial notice of "An Ordinance of the City of Beverly Hills Declaring Retroactive an Amendment to the Beverly Hills Municipal Code Concerning Parking Signage, Adopting New Regulations Concerning Notice of Parking Rates, and Amending the Beverly Hills Municipal Code," which became effective on January 17, 2003, is denied as it is unnecessary for the resolution of this appeal.

barred by constitutional constraints. (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at pp. 243-244.)

Retroactive application of a statute may be unconstitutional if it is an ex post facto law, if it impairs the obligation of a contract or if it deprives a person of a substantive right without due process of law. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].) Because we are not concerned in this case with either criminal legislation or substantial contract rights,[5] the constitutional question is one of due process only, as guaranteed by article I, section 7 of the California Constitution and the Fourteenth Amendment of the United States Constitution. Those provisions ensure that "vested" rights cannot be retroactively impaired without sufficient justification or in an irrational or arbitrary manner. (See generally *In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 591-592; *Bank of America v. Angel View Crippled Children's Foundation* (1999) 72 Cal.App.4th 451, 458-459 [85 Cal.Rptr.2d 117]; *Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972, 982-983 & fn. 2 [68 Cal.Rptr.2d 553].)

█ Initially, we are not convinced that appellant's various causes of action based on claimed violations of the BHMC's signage regulations constitute a "vested right" that has been impaired by retroactive application of a restricted definition of "vehicle parking facility."[6] █ More than 70 years ago our California Supreme Court distinguished between statutes retroactively affecting common law rights and those affecting rights based on statute: Common law rights were classified as "vested"; rights created by statute were not. (*Callet v. Alioto* (1930) 210 Cal. 65, 68 [290 P. 438].) "The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time." (*Id.* at pp. 67-68; accord, *Younger v. Superior Court* (1978) 21 Cal.3d 102, 109 [145 Cal.Rptr. 674, 577 P.2d 1014]; but see *Flournoy v. State of California, supra,* 230 Cal.App.2d 520, 531-532 ["resting decision upon the distinction between statutory and common law rights is neither justified by reason nor rule"].)

---

[5] Appellant asserts the right to notice contained in BHMC sections 4-4.202 and 4-4.206 was "imputed" into his parking contract with the Hotel. However, in light of the trial court's finding, unchallenged on appeal, that appellant neither considered nor relied upon the ordinance in establishing his contractual relationship with the Hotel, any impact of the amended ordinance on his contract rights is constitutionally insignificant. (*Allied Structural Steel Co. v. Spannaus* (1978) 438 U.S. 234, 244 [98 S.Ct. 2716, 2722, 57 L.Ed.2d 727] [legislative impairment of contract rights is forbidden only if the impairment is substantial]; *Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2001) 95 Cal.App.4th 638, 651 [115 Cal.Rptr.2d 694] [same].)

[6] Identifying a right as "vested" or not often simply represents the conclusion rather than a helpful step in the analysis of the due process issues potentially raised by retroactive application of a statute. (See *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592, fn. 9; *Flournoy v. State of California* (1964) 230 Cal.App.2d 520, 530-531 [41 Cal.Rptr. 190].)

In *Graczyk v. Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997 [229 Cal.Rptr. 494], for example, the appellate court affirmed retroactive application of a statutory change limiting the definition of "employee" under the workers' compensation law, holding there could be no constitutional objection to the retroactive operation of the statute because the applicant had no "vested right" to his status as an employee at the time of injury: "Because it is a creature of statute, the right of action exists only so far and in favor of such person as the legislative power may declare." (*Id.* at p. 1007.) Similarly, the right to recover specific types of damages, specifically damages for pain and suffering, is not a vested right "because such rights are created by state and common law independent from the Constitution." (*Yoshioka v. Superior Court, supra,* 58 Cal.App.4th at p. 982 [upholding the retroactive application of Prop. 213's prohibition of the recovery of noneconomic damages by uninsured motorists]; accord, *Honsickle v. Superior Court* (1999) 69 Cal.App.4th 756, 765 [82 Cal.Rptr.2d 36] [adopting reasoning of *Yoshioka*]; see also *Hung v. Wang* (1992) 8 Cal.App.4th 908, 921-922 [11 Cal.Rptr.2d 113] ["[i]t is well established . . . that state legislative bodies retain the authority to determine what is and what is not an actionable tort, and to decide the conditions under which suits for these alleged wrongs will be entertained—so long as the statutes they enact are rationally based and do not draw constitutionally prohibited distinctions."].)

Even if the provisions of the BHMC did create a vested right pursuant to Government Code section 36900, subdivision (a), it is settled that "[v]ested rights are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people." (*In re Marriage of Buol, supra,* 39 Cal.3d at pp. 760-761.) "The vesting of property rights . . . does not render them immutable: ' "Vested rights, of course, may be impaired 'with due process of law' under many circumstances." ' " (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592, fn. omitted [state's interest in equitable dissolution of marital relationship supported use of police power to abrogate rights in marital property that derived from unfair former law]; *Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach* (2001) 86 Cal.App.4th 534, 565-571 [103 Cal.Rptr.2d 447] [upholding retroactive application of local ordinance prohibiting oil exploration within city limits].)

Determining whether a particular retroactive provision violates due process by impairing a vested right requires weighing several factors: " 'the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which

the retroactive application of the new law would disrupt those actions.' " (*In re Marriage of Buol, supra*, 39 Cal.3d at p. 761; see also *Yoshioka v. Superior Court, supra*, 58 Cal.App.4th at p. 983.)

■ The city's amendment of the definition of "vehicle parking facility" to limit signage requirements to stand-alone parking lots is an appropriate exercise of its police power (see *Interstate Marina Development Co. v. County of Los Angeles* (1984) 155 Cal.App.3d 435, 450 [202 Cal.Rptr. 377]) and serves a legitimate public interest in regulating the businesses within the city. Retroactive application of the amended definition to existing disputes regarding the scope and interpretation of the signage ordinance was necessary to further the city's interest in ensuring fair and appropriate code enforcement. (See *In re Marriage of Bouquet, supra*, 16 Cal.3d at p. 594 & fn. 11 [retroactive application of amended statute to rectify inequities resulting from former law serves important state interest]; *Battle v. Kessler* (1983) 149 Cal.App.3d 853, 860 [197 Cal.Rptr. 170] ["[T]he state had a legitimate interest in attempting to right a wrong created by its own defective legislation."].)

In contrast to the significant interests supporting the city's intended retroactive application of the amended ordinance, there is absolutely no basis in the record from which we could conclude that appellant in fact relied in any manner on the broader definition of "vehicle parking facility" contained in the former version of the ordinance. Indeed, given that the gravamen of his complaint is lack of notice of applicable parking rates, it is difficult to imagine how any such reliance could even have been alleged. Absent such reliance, a change in the law cannot fairly be said to have harmed appellant. (See *Yoshioka v. Superior Court, supra*, 58 Cal.App.4th at p. 983, fn. 2 ["The burden of demonstrating the constitutional infirmity of a statutory scheme is squarely upon the challenger."]; *Anacker v. Sillas* (1976) 65 Cal.App.3d 416, 423 [135 Cal.Rptr. 537].)

## II. *The Notice Was Reasonable*

The parking ticket states in conspicuous, bold capital type, on two separate lines, set off from the other text (which is in smaller print) with margins and unambiguous language:

**registered guests**
**overnight parking $21.00**

■ The court ruled that as a matter of law, the notice on the parking ticket was sufficient notice of the parking charges to defeat all appellant's

common law/statutory law claims. Appellant contends the court was incorrect, especially as to the fraudulent and deceptive business practices claims.

■ Under Business and Professions Code section 17200,[7] a prohibited business practice is any practice which can be deemed unlawful, unfair, or fraudulent. (See *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 878 [85 Cal.Rptr.2d 301] [Because § 17200's definition is disjunctive, the statute is violated where a practice is unlawful, unfair or fraudulent or in violation of § 17500.].) To assert a claim, one need only show that members of the public are likely to be deceived. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

■ Appellant contends the business practice at issue should be considered to violate the UCA. Appellant reasons it would have been easy to post a sign informing the public of the parking charges; a consumer might assume valet parking was a free service; respondent's failure to notify patrons in advance of its parking charge robbed members of the public of their choice to either accept the charge and use the valet, decide the charge was too high and park elsewhere, or use the self-parking if it was provided for a lesser fee. Appellant further argues there was no reason not to post the rates; the practice violates respondent's normal practice of notifying consumers of charges in advance; and the practice forced the public to accept the charge. Appellant concedes the language is clear, but urges that the deceptive practice is the manner of delivery, as there is an issue as to whether the public would look at the ticket. Appellant further suggests that hotels should take reasonable steps to ensure most users are informed of the charge in advance and that a large sign would be best.

First, appellant is not clear what the alleged unfair business practice is. We assume appellant is objecting to providing notice via the parking ticket. Second, as noted by the court below, some of the factual basis for appellant's argument, particularly that directed toward the manner of delivery of the ticket (e.g., customers do not read the ticket, the ticket is handed faceup to the customer) is not supported by any evidence in the record.

In *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144 [93 Cal.Rptr.2d 439], the defendant's standard car rental agreement required renters to choose either to purchase fuel from the defendant at the commencement of the rental or pay a fuel service charge if they failed to return the car with a full tank. The complaint alleged the charge was an unfair business practice

[7]Section references in this section are to the unfair competition act (UCA), which is found at Business and Professions Code section 17200 et seq.

and the defendant unfairly and fraudulently concealed/obscured the charge. The Court of Appeal held the trial court erred in dismissing the plaintiff's unfair business practice concealment claim as the per gallon rate was not disclosed in the rental agreement but only in the rental record—a small and hard-to-read document consisting of mainly indecipherable abbreviations, which raised an issue of fact as to whether a reasonable customer would know of the charge. (*Id.*, at pp. 1163-1170.)

A similar issue was raised in *Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153 [97 Cal.Rptr.2d 722], in which car renters also claimed a refueling charge for rental cars returned without a full gas tank was an unlawful business practice. The court held the public was not likely to be deceived as the amount per gallon was clearly printed on the first page of the rental agreement. (*Id.*, at p. 1160.) The valet ticket issued by respondent is similar to the notice provided in *Shvarts*, not *Schnall*; the language is in bolder print than the body of the ticket, set off by margins and not confusing.

Appellant argues the rental car cases are distinguishable, as rental customers know they will be charged. However, common sense dictates it would be unreasonable for someone availing himself of valet parking at a hotel in the Los Angeles metropolitan area, much less Beverly Hills, not to expect to pay for valet parking. The ticket provides reasonable and advance notice of the charge. Although a rate sign could arguably have been better notice, there is no requirement that reasonable notice has to be the best possible notice. Moreover, a potential parker could ask if there is a charge or a self-parking lot and thus is not forced to use valet parking. Accordingly, we agree with the trial court that reasonable notice of the parking charge was provided and that the public was not likely to be deceived.

Thus, as both the summary adjudication and summary judgment motions were properly granted, we affirm the judgment.

DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

Perluss, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 18, 2003.