THE PEOPLE *ex rel.* SHARON L. SHOCKLEY, Plaintiff-Appellee, v. RONALD J. HOYLE, Defendant-Appellant.

Second District   No. 2—02—0795

Opinion filed May 27, 2003.—Rehearing denied June 19, 2003.

K.O. Johnson, of Law Office of K.O. Johnson, of De Kalb, for appellant.

Lisa Madigan, Attorney General, of Chicago (Joel D. Bertocchi and Mary Patricia Kerns, Assistant Attorneys General, of counsel), for appellee.

JUSTICE GROMETER delivered the opinion of the court:
The Illinois Department of Public Aid (IDPA) filed a petition

against defendant Ronald J. Hoyle in the circuit court of Ogle County to obtain a judicial determination that defendant was the natural father of minor Kailynd L. McGregor and to compel defendant to pay child support and obtain health insurance for Kailynd. The State, on behalf of the IDPA, filed a motion for summary judgment on the issue of paternity. The trial court granted the State's motion for summary judgment. The trial court also ordered defendant to pay child support and support arrearages, required defendant to name Kailynd as a beneficiary on his health insurance, and awarded defendant the income tax exemption for Kailynd. On appeal, defendant challenges the trial court's determination of paternity. We affirm.

## FACTS

Kailynd was born to Sharon L. Shockley on May 27, 1989, in Alameda, California. Kailynd's birth certificate, which Shockley signed, lists John P. Van Olden as the minor's father. Shockley and Van Olden were never married. Eventually, Shockley and Kailynd moved to Montana.

On October 29, 1999, the IDPA filed a petition on behalf of the State of Montana Department of Public Health and Human Services, Child Support Enforcement Division (CSED), seeking to (1) establish that defendant is Kailynd's father and (2) obtain child support and medical coverage from defendant for Kailynd. See 750 ILCS 22/100 *et seq.* (West 2000) (the Uniform Interstate Family Support Act). Attached to the petition was an affidavit in support of establishing paternity. In the affidavit, Shockley alleged that she became pregnant on October 1, 1988, and that Kailynd was born six weeks prematurely. Shockley further alleged that her physician did not establish that Kailynd was premature until after Shockley filled out the birth certificate. Given the confusion about Kailynd's conception date, Shockley listed Van Olden as Kailynd's father on the birth certificate. Shockley stated that Van Olden neither signed an acknowledgment of paternity nor held himself out to be Kailynd's father. Shockley further alleged that Kailynd was conceived while Shockley was involved in a relationship with defendant, a man to whom she was never married.

Defendant filed an answer denying the substantive allegations of the petition. Defendant also filed a motion for declaratory judgment and sanctions. In support of his motion for declaratory judgment, defendant alleged that (1) under the law of California, the state of Kailynd's birth, Van Olden had been established as Kailynd's father; (2) Shockley is estopped to assert that anyone other than Van Olden is Kailynd's father; and (3) section 27 of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/27 (West 2000)) requires the court

to grant full faith and credit to California's determination of paternity. The trial court denied defendant's motion and entered an order requiring Shockley, Kailynd, and defendant to undergo deoxyribonucleic acid (DNA) tests. The test results indicated that the probability of defendant's paternity of Kailynd was 99.96%.

The State, on behalf of the IDPA, then moved for summary judgment. Defendant opposed the State's motion on the same grounds asserted in his motion for declaratory judgment. The trial court granted the State's motion based on the results of the DNA tests. The court later ordered defendant to pay child support and support arrearages, required defendant to name Kailynd as a beneficiary on his health insurance policy, and awarded defendant the income tax exemption for Kailynd effective beginning the 2002 tax year. Defendant appealed.

## ANALYSIS

The principal issue in this case is whether, under California law, Kailynd's parentage was established by the issuance of the minor's birth certificate, which named Van Olden as Kailynd's father. Defendant asserts that under section 102425 of the California Health and Safety Code (Cal. Health & Safety Code § 102425 (West 2002)) and sections 7573 and 7576 of the California Family Code (Cal. Fam. Code §§ 7573, 7576 (West 2002)), a man is presumed to be a child's father if he is listed as the father on the child's birth certificate. Defendant further asserts that, although California law provides a mechanism by which this presumption of paternity may be rebutted or set aside (see, e.g., Cal. Fam. Code §§ 7575, 7576 (West 2002)), neither Shockley nor Van Olden challenged the finding of paternity within the statutorily mandated periods of time. Thus, defendant reasons that Illinois courts are required to uphold California's determination of paternity under the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) and section 27 of the Parentage Act (750 ILCS 45/27 (West 2000)), which provides that establishments of paternity made under the laws of other states shall be given full faith and credit in Illinois.

The State counters that no presumption of paternity arose by the fact that the birth certificate issued in 1989 named Van Olden as Kailynd's father. The State points out that defendant's entire argument is based on *current* California law relating to presumptions of paternity. However, the State posits that the statutory provisions relied on by defendant are not applicable in this case because they were not in effect in 1989 when Kailynd was born and her birth certificate was completed. According to the State, application of the statute in effect at the time of Kailynd's birth does not create a presumption that the

man listed on her birth certificate is her natural father. See Cal. Health & Safety Code § 10125 (West 1989).

■ In appeals from orders granting summary judgment, our review is *de novo. Vinzenz v. Hintzsche Fertilizer, Inc.*, 336 Ill. App. 3d 468, 471 (2003). This case also involves questions of statutory construction and interpretation, which are also subject to *de novo* review. *Department of Public Aid ex rel. Howard v. Graham*, 328 Ill. App. 3d 433, 435 (2002).

■ As defendant correctly notes, the full faith and credit clause of the United States Constitution requires each state to give full faith and credit to the judicial proceedings of every other state. U.S. Const., art. IV, § 1. Similarly, section 27 of the Parentage Act (750 ILCS 45/27 (West 2000)) requires Illinois to recognize establishments of paternity made under the laws of other states. In this case, defendant claims that Kailynd's parentage has already been determined under California law and that Illinois courts must recognize this determination. California law mandates the contents of a child's birth certificate. Current California law provides in relevant part:

"§ 102425. Certificate of live birth; required information

(a) The certificate of live birth for any live birth occurring on or after January 1, 1980, shall contain those items necessary to establish the fact of the birth and shall contain only the following information:

\* \* \*

(4) Full name of the father, birthplace, and date of birth of the father including month, day, and year. *If the parents are not married to each other, the father's name shall not be listed on the birth certificate unless the father and the mother sign a voluntary declaration of paternity at the hospital before the birth certificate is prepared.* The birth certificate may be amended to add the father's name at a later date only if paternity for the child has been established by a judgment of a court of competent jurisdiction or by the filing of a voluntary declaration of paternity." (Emphasis added.) Cal. Health & Safety Code § 102425(a)(4) (West 2002).

Section 7576 of the California Family Code provides that the child of a man and a woman who execute a voluntary declaration of paternity is conclusively presumed to be the man's child. Cal. Fam. Code § 7576 (West 2002). Section 7573 of the California Family Code provides that, with limited exceptions, a completed voluntary declaration of paternity that has been filed with the California Department of Child Support Services "shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction." Cal. Fam. Code § 7573 (West 2002).

Relying on these statutory provisions, defendant contends that because Shockley and Van Olden were not married, Van Olden must have signed a voluntary declaration of paternity in order for his name to appear on Kailynd's birth certificate. Having signed a declaration of paternity, Van Olden is presumed to be Kailynd's father under California law. Thus, defendant argues that this determination of paternity, which has the same force and effect as a judgment of paternity issued by a court of competent jurisdiction, must be given full faith and credit in Illinois.

We initially note that the record does not contain a voluntary declaration of paternity signed by Van Olden, nor any evidence that a declaration of paternity was filed with California authorities. In addition, in her affidavit in support of establishing paternity, Shockley stated that Van Olden did not sign an acknowledgment of paternity. Furthermore, as the State correctly points out, defendant relies on statutory language that did not exist when Kailynd's birth certificate was prepared in 1989. The legislative history of section 102425 of the California Health and Safety Code reflects that the provision was previously designated as section 10125 of the California Health and Safety Code (Cal. Health & Safety Code § 10125 (West 1989)) and that the language requiring the father of a child born to unmarried parents to execute a voluntary declaration of paternity before he is listed on the child's birth certificate was added in 1996. 1996 Cal. Legis. Serv. ch. 1062 (West); 1995 Cal. Legis. Serv. ch. 415 (West). In addition, other provisions of the California Family Code cited by defendant, including sections 7573, 7575, and 7576 (Cal. Fam. Code §§ 7573, 7575, 7576 (West 2002)), were not added until 1996. 1996 Cal. Legis. Serv. ch. 1062 (West). Because the statutory provisions relied on by defendant did not exist when Kailynd's birth certificate was prepared, we agree with the State that the statutory presumption of paternity permitted under those provisions could not apply to this cause.

Instead, we look to the law in effect when Kailynd's birth certificate was prepared, to determine whether a presumption of paternity arose by the fact that Kailynd's birth certificate listed Van Olden as the father. See *Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 959, 131 Cal. Rptr. 2d 303, 307 (2003) (noting that under California law, statutes do not operate retroactively unless the legislative body enacting the measures clearly indicates its intent that they do so). At that time, section 10125 of the California Health and Safety Code (Cal. Health & Safety Code § 10125 (West 1989)) governed the contents of a newborn's birth certificate. Section 10125 provided in relevant part:

"§ 10125. Certificate of live birth; required information

(a) The certificate of live birth for any live birth occurring on or after January 1, 1980, shall contain those items necessary to establish the fact of the birth and shall contain only the following information:

* * *

(4) *Full name of father, birthplace, and date of birth of father including month, day, and year.*" (Emphasis added.) Cal. Health & Safety Code § 10125(a)(4) (West 1989).

Upon examination of this statutory provision, it is clear that in 1989, the year that Kailynd's birth certificate was prepared, section 10125 did not require the father of a child born to unmarried parents to sign a voluntary declaration of paternity to be listed on his child's birth certificate. Moreover, sections 7573, 7575, and 7576 of the California Family Code (Cal. Fam. Code §§ 7573, 7575, 7576 (West 2002)) did not yet exist. Therefore, the fact that Van Olden was listed on a birth certificate issued in 1989 did not create a presumption that he was Kailynd's father.

In 1989, statutory presumptions of paternity in California were governed by section 7004 of the California Civil Code (Cal. Civ. Code § 7004 (West 1989)) and section 621 of the California Evidence Code (Cal. Evid. Code § 621 (West 1989)). Section 7004 provided in relevant part:

"§ 7004. Natural father; rebuttable presumption; conditions

(a) A man is presumed to be the natural father of a child if he meets the conditions as set forth in Section 621 of the Evidence Code or in any of the following paragraphs:

(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court.

(2) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and,

(i) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce; or

(ii) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.

(3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solem-

nized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and

(i) With his consent, he is named as the child's father on the child's birth certificate, or

(ii) He is obligated to support the child under a written voluntary promise or by court order.

(4) He receives the child into his home and openly holds out the child as his natural child.

\* \* \*

(b) Except as provided in Section 621 of the Evidence Code, a presumption under this section is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise under this section which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man." Cal. Civ. Code § 7004 (West 1989).[1]

Section 621 of the California Evidence Code provided that the child of a wife cohabiting with her husband shall be conclusively presumed to be a child of the marriage unless blood tests show otherwise. Cal. Evid. Code § 621 (West 1989).

In this case, Van Olden could not be presumed to be Kailynd's father under either section 7004 of the California Civil Code or section 621 of the California Evidence Code. Application of section 7004 of the California Civil Code does not create a presumption of paternity in this case because there is no evidence that the conditions listed in that statutory provision were satisfied with respect to Van Olden and Shockley. In addition, there is no presumption of paternity under section 621 of the California Evidence Code, since there is no evidence that Van Olden was married to and cohabiting with Shockley at the time of Kailynd's birth. As a result, we conclude that no presumption of paternity was created by the fact that the birth certificate issued in 1989 listed Van Olden as Kailynd's father.

---

[1]Although section 7004 of the California Civil Code has been repealed (see 1993 Cal. Legis. Serv. ch. 219 (West)), its statutory provisions survive as sections 7611, 7611.5, and 7612 of the California Family Code (Cal. Fam. Code §§ 7611, 7611.5, 7612 (West 2002)). However, in *In re Jerry P.*, 95 Cal. App. 4th 793, 807, 116 Cal. Rptr. 2d 123, 133 (2002), the California Court of Appeals declared subdivision (d) of section 7611 (providing that a man is presumed to be the natural father of a child if he receives the child into his home and openly holds out the child as his natural child) unconstitutional to the extent that it allows a mother or third person unilaterally to preclude a father from becoming a "presumed father."

■ To summarize, the law in effect when Kailynd's birth certificate was prepared in 1989 did not create a presumption that the man listed on the birth certificate is Kailynd's father. Because there was no previous determination of paternity, the trial court properly rejected defendant's argument that Van Olden's paternity was established by the issuance of the birth certificate naming him as Kailynd's father and that such document was entitled to full faith and credit under either the United States Constitution (U.S. Const., art. IV, § 1) or section 27 of the Parentage Act (750 ILCS 45/27 (West 2000)).

Defendant cites extensively to *Michael H. v. Gerald D.*, 491 U.S. 110, 105 L. Ed. 2d 91, 109 S. Ct. 2333 (1989), in support of his argument that Van Olden's status as Kailynd's father could not be challenged. Defendant claims that Kailynd's parentage was established by the registration of her birth certificate in California in 1989 and that Shockley, Kailynd, and Van Olden constitute a nontraditional familial unit. See *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). According to defendant, Kailynd's "established legal parentage and familial unit" represent a protected liberty interest under the due process clause of the United States Constitution (U.S. Const., amend. XIV) and it is in Kailynd's best interests to preserve the stability and integrity of her existing parentage.

At issue in *Michael H.* was whether the statutory presumption in section 621 of the California Evidence Code (Cal. Evid. Code § 621 (West Supp. 1989)) infringes upon the due process rights of a man who wishes to establish his paternity of a child born to the wife of another man. *Michael H.*, 491 U.S. at 113, 105 L. Ed. 2d at 99, 109 S. Ct. at 2337. In rejecting the putative father's due process claim, a plurality of the Supreme Court emphasized the important social policy of preserving the unitary family. *Michael H.*, 491 U.S. at 123-24, 105 L. Ed. 2d at 106, 109 S. Ct. at 2342.

We find that defendant's reliance on *Michael H.* is misplaced. First, as discussed previously, section 621 is not applicable to these proceedings because Shockley and Van Olden were not married and no presumption of paternity was created by virtue of their relationship. Second, the social policy concern addressed in *Michael H.* is simply not present here. Shockley, Kailynd, and Van Olden never formed a family unit. There is no evidence that Shockley or Kailynd ever lived with Van Olden. Indeed, there is no evidence that Van Olden was even aware of Shockley's pregnancy or Kailynd's birth. Accordingly, in this case, unlike the relationship among husband, wife, and child in *Michael H.*, there was no family unit to preserve which would preclude a finding of paternity by defendant.

■ Moreover, defendant's argument appears to be premised on the

proposition that a finding that defendant is Kailynd's natural father would deprive Van Olden of his due process rights. However, as a general rule, a litigant has standing only to vindicate his or her own constitutional rights. *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796, 80 L. Ed. 2d 772, 781, 104 S. Ct. 2118, 2124 (1984). In other words, defendant lacks standing to assert the alleged deprivation of Van Olden's due process rights.

■ Defendant next claims that under California law Shockley is estopped to deny that Van Olden is Kailynd's father because she named Van Olden as Kailynd's father on the minor's birth certificate and did nothing to correct the document in 1989 after discovering that Kailynd was born prematurely. Defendant's argument is premised on section 623 of the California Evidence Code (Cal. Evid. Code § 623 (West 2002)), which provides:

"§ 623. Estoppel by own statement or conduct

Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Cal. Evid. Code § 623 (West 2002).

Defendant's reliance on section 623 is misplaced.

As we previously discussed, no presumption of paternity was created by the inclusion of Van Olden's name on Kailynd's birth certificate. Moreover, there is no evidence that Shockley ever held out Kailynd as Van Olden's child. To the contrary, the record establishes that Shockley has consistently maintained that defendant is Kailynd's father. In the trial court, Shockley testified that she informed defendant of her pregnancy in October 1988, soon after she learned she was pregnant. At birth, Kailynd weighed about 9 1/2 pounds. Shockley listed Van Olden on the birth certificate because she was confused about the date of conception due to Kailynd's size at birth. She later learned that Kailynd was six weeks premature. Kailynd's weight was attributed to the fact that Shockley had gestational diabetes, which went undiagnosed during her pregnancy. In January 1990, Shockley sought to confirm the date of conception and asked defendant to undergo a paternity blood test. Defendant agreed. The result of the test showed the "estimated 'plausibility of paternity' " to be 94.35% or "likely." When Shockley informed defendant of the results, he told her that he did not want to be a part of Kailynd's life and that he did not want the birth certificate changed to reflect his status. Shockley also claimed that defendant threatened to take custody of Kailynd if she told anyone he was Kailynd's father. Based on this evidence, we conclude that Shockley was not legally estopped to deny that Van Olden was Kailynd's father.

■ Finally, defendant asserts that claims made by Shockley in the trial court that he provided support for and had contact with Kailynd did not constitute a voluntary assumption of parental responsibilities. According to defendant, Shockley "coerced [him] into unwillingly providing support for a child whose birth certificate states another man is her father." We initially note that the trial court did not rely on this basis in its determination of paternity. In any event, we conclude that the record in this case belies defendant's claims.

The record reveals that in July 1990, before defendant left California for Illinois, he visited Kailynd and gave Shockley his parents' address. In December 1990, Shockley received a package from defendant. The package contained some toys and a letter. Shockley and defendant spoke by telephone in January 1991. During one of their conversations, defendant informed Shockley that he wanted to establish a relationship with Kailynd. Defendant sent Kailynd a Valentine's Day card and birthday gifts in 1991. Shockley also began receiving gifts for Kailynd from members of defendant's family. Defendant maintained contact through the rest of 1991 and in 1992 and 1993. Defendant sent cards, letters, gifts, a photo album of his family, and a family tree. Defendant even asked Shockley if Kailynd could visit him in Illinois. In October 1993, Shockley and Kailynd visited defendant in Illinois. Defendant sent Shockley and Kailynd airplane tickets and picked them up at the airport. Shockley and Kailynd stayed at defendant's parents' home for 10 days. During their stay, defendant's parents held a family gathering at which Shockley and Kailynd met defendant's relatives. Although defendant denied that Shockley and Kailynd made a second trip to Illinois, Shockley testified that she and Kailynd visited defendant in 1994. According to Shockley, following the 1994 visit, defendant's contact with Kailynd became more sporadic. The last time Shockley had any contact with defendant was in May 1996. Thus, the record demonstrates that defendant's contact with Kailynd was voluntary.

## CONCLUSION

For the aforementioned reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

McLAREN and O'MALLEY, JJ., concur.